574 So.2d 671 (1990)
James Lee HANDLEY
v.
STATE of Mississippi.
No. 07-KA-58858.
Supreme Court of Mississippi.
December 27, 1990.
*672 Gerard F. Smith, Gulfport, for appellant.
Mike C. Moore, Atty. Gen., Leyser Q. Morris, Sp. Asst. Atty. Gen., Jackson, for appellee.
Before DAN M. LEE, P.J., and SULLIVAN and BLASS, JJ.
DAN M. LEE, Presiding Justice, for the Court:

I.
James Lee Handley was found guilty of sale of a controlled substance on June 16, 1987. The following day, June 17, 1987, he was sentenced as an habitual offender pursuant to Miss. Code Ann. § 99-19-81 to 30 years in the custody of the Mississippi Department of Corrections. Aggrieved by his conviction and sentence, Handley perfected this appeal. After a thorough review of the record and arguments presented, we affirm.

II.
The Mississippi Bureau of Narcotics (MBN), in conjunction with the Harrison County Sheriff's Office, conducted an undercover narcotics investigation in Harrison County during the first few months of 1985. The investigation included surveillance of, and undercover transactions at, the Hollywood Lounge, aka the Hot Spot Lounge and Tim's Motel.
Approximately 2:30 p.m. on Monday, January 14, 1985, Jerry Langford (Langford), a narcotics officer with the Harrison County Sheriff's Department assigned to assist a member of the MBN in a drug buy, positioned his vehicle approximately 25 to 30 yards from the Hot Spot Lounge. At this time he observed James Lee Handley (Handley), a person he had known for two to three (2-3) years, sitting on the hood of a car in front of the lounge. Ten minutes *673 later, 2:40 p.m., Langford observed MBN Agent Roy Sandefer (Sandefer) arrive at the lounge. Langford watched as Sandefer followed Handley into the lounge.
Sandefer knew Handley before January 14, 1985. Upon entering the lounge Handley identified himself as "Frisco" and asked what Sandefer was looking for. Sandefer said he was looking for "sets." The men entered the bathroom, Handley removed two (2) "sets" from his shirt pocket and sold them to Sandefer for a total of twenty-four dollars ($24.00). Sandefer, observed by Langford, then left the premises; two or three (2-3) minutes had elapsed from the time Sandefer entered the lounge.
Shortly thereafter, approximately 3:00 p.m., Langford and Sandefer met at a predetermined location. Sandefer showed Langford what he had purchased from Handley: two (2) tin foils, each containing one oblong yellow pill marked T/51 and one round blue pill marked Geigy 43, commonly referred to as T's and Blues, or "sets."
Sandefer placed the two (2) "sets" in an evidence bag and put them in a locked filing cabinet on the 14th of January. He delivered the evidence bag to Betty Dedeaux with the Mississippi Crime Lab in Gulfport on January 16, 1985.
Timothy P. Gross, a drug analyst with the Crime Lab in Harrison County, examined the evidence between April 3 and April 9, 1985. His report, issued April 9, 1985, found the yellow tablet to be a Schedule II controlled substance; the blue tablet was not a controlled substance.
Handley was arrested April 22, 1985, by Officer Langford and charged with sale of a controlled substance. He was indicted as an habitual offender under § 99-19-83 in September 1985. A Waiver of Arraignment and Entry of Plea was filed November 16, 1985, at which time trial was scheduled for February 12, 1986. Handley had a court appointed attorney at this point, Ms. Karen Young, although the Order appointing Ms. Young was not entered until February 6, 1986. That same date, Ms. Young filed a Demurrer to the Indictment.
Handley did not appear on February 12, 1986. The trial court entered its Order February 12, 1986, forfeiting Handley's bond and issuing an instanter alias capias for Handley. The only record reference to the events following February 12, 1986, are found in Handley's May 13, 1987, Motion for Setting of Bond in which it is alleged that he had been continuously incarcerated in the Harrison County Jail since September 1986.
Ms. Young filed another Demurrer to the Indictment and a Motion to Dismiss on November 11, 1986. The basis of the Motion to Dismiss was violation of Handley's constitutional and statutory right to a speedy trial. The Motion to Dismiss also contained a request for a speedy trial. Represented by Ms. Young, Handley was tried beginning December 15, 1986. This trial resulted in a mistrial on December 16, 1986.
Ms. Young was allowed to withdraw as counsel and Otto "Skip" Wusnack was substituted as appointed counsel for Handley on December 19, 1986. On January 9, 1987, Mr. Wusnack was allowed to withdraw and Gerard Smith was substituted as appointed counsel.
Smith filed a Motion to Dismiss based on violation of Handley's constitutional and statutory right to a speedy trial on March 5, 1987. Handley privately obtained the services of Mr. Douglas Ainsworth, Esquire; Mr. Smith was allowed to withdraw as appointed counsel on May 8, 1987.
Handley, represented by Mr. Ainsworth, was subjected to a second trial beginning June 15, 1987. Handley did not testify. He was found guilty on June 16, 1987, and sentenced as an habitual offender on June 17, 1987.
Through trial counsel Ainsworth, Handley filed a Motion for Judgment Notwithstanding the Verdict or, in the Alternative, a New Trial on June 26, 1987, which was heard and denied July 10, 1987.
Ainsworth filed a Motion to Withdraw as counsel on July 13, 1987. This motion was granted on July 31, 1987, and Gerard F. Smith was substituted as counsel for Handley. Handley's Notice of Appeal, prepared *674 by Ainsworth, was filed July 31, 1987. Six (6) errors are presented for consideration.

III.

Was the Defendant Denied a Speedy Trial?

A.
The determination of whether a violation of the right to a speedy trial has occurred begins with a calculation of lapse of time. In order to correctly calculate the time lapses, it is necessary to distinguish between the constitutional and statutory periods for when the right to a speedy trial attaches and time begins running.
For constitutional purposes, the right to a speedy trial attaches, and the time begins running, "at the time of a formal indictment or information or else the actual restraints imposed by arrest and holding to a criminal charge." Lightsey v. State, 493 So.2d 375, 378 (Miss. 1986). Accord Vickery v. State, 535 So.2d 1371, 1376 (Miss. 1988); Beavers v. State, 498 So.2d 788, 789-91 (Miss. 1986); Perry v. State, 419 So.2d 194, 198 (Miss. 1982). Our most recent case indicates that, for constitutional purposes, the right to a speedy trial attaches and time begins to run with arrest. Smith v. State, 550 So.2d 406, 408 (Miss. 1989). Accordingly, for constitutional speedy trial purposes, time began running against Handley on April 22, 1985, the date of his arrest.
Once the constitutional right to a speedy trial has attached, this Court must examine the facts of the case and engage in a functional analysis of those facts in accordance with Barker v. Wingo, 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972) to determine whether the constitutional right to a speedy trial has been denied. Vickery v. State, 535 So.2d 1371, 1376 (Miss. 1988); Dedeaux v. State, 519 So.2d 886, 888 (Miss. 1988). This functional analysis requires a three-step process. First, we must calculate the time periods. Second, we must analyze those time periods in light of all circumstances, including the conduct of both the prosecution and the defendant, in conjunction with the Barker factors: (1) length of the delay; (2) reason for the delay; (3) defendant's timely assertion of his right to a speedy trial; and (4) resulting prejudice to the defendant. Vickery, 535 So.2d at 1376. Third, we must weigh each of these factors in light of the particular facts of the case, keeping in mind that it is often "impossible to determine with precision when the right has been denied." Barker, 407 U.S. at 521, 92 S.Ct. at 2187.
Unlike the constitutional time period which is calculated on an ad hoc basis, Mississippi has prescribed by statute a specific time period during which an accused must be tried: 270 days. Miss.Code.Ann. § 99-17-1. Commonly known as the 270-day rule, the statutory right to a speedy trial attaches with arraignment. See § 99-17-1 (1976); Payne v. State, 363 So.2d 278 (Miss. 1978). Calculation of statutory time requires exclusion of the date of arraignment and inclusion of the date of trial and weekends, unless the last day of the 270 day period falls on Sunday. Ransom v. State, 435 So.2d 1169 (Miss. 1983).
Any delays in prosecution attributable to a defendant under either the constitutional or statutory scheme tolls the running of time. Vickery at 1375; Perry at 199. Likewise, any continuances for "good cause" will toll the running of time unless "the record is silent regarding the reason for delay," in which case "the clock ticks against the State because the State bears the risk of non-persuasion on the good cause issue." Vickery at 1375, 1377.
The statutory 270 day rule is satisfied once the defendant is brought to trial, even if that trial results in a mistrial. Kinzey v. State, 498 So.2d 814, 816 (Miss. 1986); State v. Thornhill, 251 Miss. 718, 723, 171 So.2d 308, 310 (1965). Thereafter, the time of retrial is within the discretion of the trial court. Kinzey 498 So.2d at 816; Thornhill 251 Miss. at 723, 171 So.2d at 310. This Court utilizes the Barker factors in determining whether the discretionary length of time between trials violated the defendant's constitutional right to a speedy trial. Kinzey 498 So.2d at 816.
*675 In this case we are concerned with the calculation of three (3) time periods: (1) the time between arrest and first actual trial for constitutional purposes; (2) the time between arraignment and first actual trial for statutory purposes; and (3) the time between mistrial and retrial.

B.
In determining whether Handley was denied a speedy trial we must examine the three (3) time periods previously mentioned. We first address the time between arrest and actual trial for constitutional purposes and the time between arraignment and first actual trial for statutory purposes.

ARREST/ARRAIGNMENT TO FIRST ACTUAL TRIAL

Calculation of time
A chronology of events, together with constitutional and statutory time calculations, is included at this point.

 Constitutional Statutory
Event Date No. of Days No. of Days
Sale .................... 01-14-85 .......... 0 ................. 0 .......
ARREST .................. 04-22-85 .... TIME ATTACHES ........... 0 .......
Indictment .............. 09-??-85 ......... 162[*] ............. 0 .......
 ([*] = 162 days from arrest assuming, to Handley's benefit, indictment
 09-30-85)
ARRAIGNMENT ............. 11-26-85 ......... 219[*] ......... TIME ATTACHES
 ([*] = 57 days from indictment)
Day after ............... 11-27-85 ........... .................. 1 .......
Original Trial
 Date; Handley
 jumps bond and
 fails to appear ........ 02-12-86 ......... 297[*] ............ 78 .......
 ([*] = 78 days from arraignment)
Handley found ........ 09-01 or 30-86 ...... 497[*] ........... 278[*]...
 TIME TOLLED: 02-12-86 to 09-86[*]
 ([*] = 200 days assuming, to Handley's benefit, recapture 09-01-86)
Motion to Dismiss
 filed, FIRST TIME RAISED Speedy
Trial ................... 11-11-86 ........... ............................
TRIAL ................... 12-15-86 ......... 603[*] ........... 384[*] ....
 ([*] = 106 days from recapture assuming, to Handley's benefit, recapture
 09-01-86)

To complete the calculation of time, it is necessary to deduct from the total number of days, 603 and 384 respectfully, that period of time that Handley absented himself by jumping bond. In the absence of a record to the contrary, for purposes of this calculation, we assess the time that enures to Handley's benefit: recapture on September 1, 1986. Having done that, the delay between arrest and first actual trial becomes 403 days (603 minus 200) for constitutional *676 purposes and 184 days (384 minus 200) for statutory purposes.
Based on the foregoing, it is clear that Handley's statutory right to be tried within 270 days was not violated. To determine if his constitutional right to a speedy trial was violated, it is necessary to assess and weigh the facts of this case in light of the Barker factors, supra.

BARKER FACTORS  First Trial

1. Length of Delay

As previously noted, Handley was actually tried 603 days, or approximately 20 months, after arrest. This Court has reversed cases where the delay was less than 603 days. See Smith v. State, 550 So.2d 406 (Miss. 1989) (370 days); Beavers v. State, 498 So.2d 788 (Miss. 1986) (423 days); Bailey v. State, 463 So.2d 1059 (Miss. 1985) (298 days); Perry v. State, 419 So.2d 194 (Miss. 1982) (566 days).
Twenty (20) months is a substantial period of time and is "presumptively prejudicial" to Handley. This factor, alone, is insufficient for reversal, but requires a close examination of the remaining factors. Smith, 550 So.2d at 408; Bailey, 463 So.2d at 1062. If the remaining factors evidence a lack of support "in favor of the prosecution (or in the absence of the defendant's position on the other Barker factors being weak)", reversal may be warranted. Beavers, 498 So.2d at 790.

2. Reason for the Delay

There are several reasons for the 603 day delay. We examine them in chronological order.
The first delay is the 162 days from arrest to indictment. The record does not reflect any reason for this delay, nor does the State address this delay in the record or in its brief. The failure of the State to address this lapse of time and show good cause therefore is tantamount to confession of error, and this Court will accept it as such. Turner v. State, 383 So.2d 489, 491 (Miss. 1980). "Where the defendant has not caused the delay, and where the prosecution has declined to show good cause for the delay, we must weigh this factor against the prosecution." Perry v. State, 419 So.2d 194, 199 (Miss. 1982). Accordingly, the 162 day delay between arrest and indictment is charged against the State.
Secondly is the 57-day delay between indictment and arraignment. Again, we find no explanation for this delay from the State, either in the record or in the brief. However, we are aware of the procedure which must be followed before arraignment may occur and the fact that Handley jumped his bond shortly after arraignment.
Thirdly is the 78-day delay between arraignment and the first scheduled trial. As previously noted, this delay is not unreasonable under the facts and circumstances in this case.
Next is the delay caused by Handley himself. Handley was originally scheduled to go to trial February 12, 1986. Handley jumped bond and failed to appear at that time. An Order was entered forfeiting his bond and an instanter alias capias was issued. A review of the record shows that he was recaptured and taken into custody sometime during September 1986. Since no specific date in September is given, we have assigned a recapture date which benefits Handley: September 1, 1986.
Two hundred (200) days elapsed from February 12, 1986, until September 1, 1986, assuming Handley was incarcerated September 1, 1986. The reason for this delay, as reflected in the trial court's February 12, 1986, Order, was caused by Handley himself. "If the defendant causes the delay he will not be allowed to complain." Bailey at 1062 citing to Perry at 199. Accordingly the delay of 200 days is attributable to Handley.
Finally, we are left with the delay between the time Handley was incarcerated following his flight [which we have set as September 1, 1986], and the actual trial on December 15, 1986, a period of 76 days. A delay of seventy-six (76) days under the circumstances is most reasonable.

*677 3. Defendant's Assertion of His Right to a Speedy Trial

Handley's first assertion of his right to a speedy trial came after his recapture in his first Motion to Dismiss on November 11, 1986, 35 days prior to his first actual trial. Handley's "failure to assert his right to a speedy trial prior to this time weighs against him, [but] it is by no means fatal to his claim that he was denied a speedy trial. Instead, it is only one factor to be considered in the Barker balancing test. Barker, 407 U.S. at 533, 92 S.Ct. at 2193." Smith v. State, 550 So.2d 406, 409 (Miss. 1989).

4. Prejudice to the Defendant

Handley claims resulting prejudice from a lack of speedy trial in the following manner: (1) memory lapse of the Defendant and other defense witnesses; (2) "record memory" of witnesses for the State without the benefit of proper foundation; (3) resulting stigma to Handley and an increase in his anxiety; and (4) Handley's chief witness, Allen Murphy, died between the first and second trials. These assertions of prejudice are argued, however, in terms of how they affected the retrial, not the original trial. Having presented no argument supported by a record of prejudice suffered as a result of the delay from arrest to the first trial, Handley has failed to show prejudice as a result of the delay.
Balancing the four (4) factors above in light of the totality of the circumstances, we find that Handley was not denied his Constitutional right to a speedy trial. We must now determine whether Handley was denied his Constitutional right to a speedy trial as a result of the delay between mistrial and retrial.

MISTRIAL TO RETRIAL
A chronology of events is included at this point.

Event Date
MISTRIAL ......................................................... 12-16-86
Court Appointed Attorney # 2 ..................................... 12-19-86
Court Appointed Attorney # 3 (medical w/drawal of attorney # 2) .. 01-09-87
Motion to Dismiss filed, Speedy Trial ............................ 03-05-87
Motion to Dismiss taken under Advisement ......................... 03-16-87
Privately Employed Attorney, ..................................... 05-08-87
Handley's Motion to continue filed ............................... 05-15-87
Motion to Continue Granted ....................................... 05-21-87
2d TRIAL ......................................................... 06-17-87
 184 days from Mistrial

Once again it is necessary to assess and weigh the facts of this case in light of the Barker factors, supra, to determine if the 184 day delay between mistrial and retrial violated Handley's Constitutional right to a speedy trial.

BARKER FACTORS  Retrial

1. Length of Delay

Handley was retried June 17, 1987, 184 days, or approximately six (6) months after mistrial. Unless this delay is "presumptively prejudicial" there is no need to consider the additional factors. Bailey 463 So.2d at 1062.
A delay is generally considered "presumptively prejudicial" if it is eight (8) months or longer. Smith, 550 So.2d at 408 and authorities cited therein. Under this general rule, we find that the six (6) month delay between mistrial and retrial sub judice was not "presumptively prejudicial" and, therefore, there is no need to consider the remaining factors.
We find that Handley's constitutional right to a speedy trial was not violated *678 because of the six (6) month time period between mistrial and retrial. Having so held, we now turn to the remaining issues.

IV.

Was There Prosecutorial Misconduct in Regard to State's Closing Argument?

A.
Handley contends that during closing argument counsel for the State made impermissible comments by (1) injecting his personal emotions and opinions into the case; (2) vouching for one of the State's witnesses; (3) commenting by innuendo and supposition on Handley's failure to testify; (4) misstating the testimony of one of the State's witnesses; (5) down playing the seriousness of the case, thereby diminishing the responsibility of the jury; (6) commenting on the punishment facing Handley; (7) referencing other crimes and convictions of Handley; and (8) going "wild with speculation." The comments complained of are reproduced here, verbatim:
(1)(6)(7)(8)
Ladies and gentlemen, you know these two convicted felons are in jail with this man up in Harrison County, and as one of them told you, he talked to him; Mr. Murphy. They're friends. They can't lose anything by lying for him. Come up here and we'll help you out. We're all in the same boat, we've all been convicted by the State. Let's get them back. This man is looking at going to the penitentiary, in the Court's discretion. That's up to his Honor, should you convict him.
Why would his stepdaughter lie? Her mother is married to him. Blood is thicker than water. (R. 297).
(2)
Ladies and gentlemen, let me just clear something up for y'all very quickly. Mr. Langford is not a policeman now. He's working for a private attorney and he's been so far a long time. What does he have to gain coming up here to lie? He's not going going to commit perjury for something that's not true. He's a private citizen. He was a policeman for eleven years; did a very good job, always been honest. I've known him when I was a defense attorney for five years and now as a prosecutor, and whatever he says, you can believe. (R. 296)
(3)(6)
Ladies and gentlemen, you're very intelligent people; you're not stupid. You've been through a lot in life and I'm sure you can tell who's lying and who's telling the truth. Do you recall the testimony of another witness for the defendant, his stepdaughter? Keep in mind who has something to gain by lying. The police don't have anything. They work case after case. It's just their job. This defendant faces time in the penitentiary. He has everything to gain. Who does he bring forward; his stepdaughter and two convicted felons who were in jail with him. One was a very good friend  two are friends of him. One has been a friend for over ten years. (R. 287-88)
(4)
Now, each set was wrapped in tin foil. You heard that testimony. You have one set here, and you have this set that's been tested by Mr. Gross. (indicating) He tested both the blue pill which is the pyrobenzamine which is not a controlled substance, and the yellow pill which is the pentazocine. That is a controlled substance. It was pentazocine; period. He ran three separate tests on it. "I consumed those two pills in that test." (R. 284)
(5)
If it please the Court, Mr. Ainsworth; I'm going to be reflecting back on the evidence as I recall it, and I'm sure defense counsel will be doing the same. If our recollection differs, you go with yours because you are the trier of the facts. You must decide what the facts in this case are. Remember I told you during voir dire that I'm not required to prove a perfect case and you said you would not hold me to that. I also told you that you sit here and determine the facts of *679 the case, and you have to determine who's lying and who's telling the truth. Let's boil this case down to the very basic theme; who's lying, who's telling the truth. Are the two policemen lying or are they telling the truth, or are all these witnesses lying or are they telling the truth.
(7)
Like Mr. Langford told you, backed up the defense's own witness, Mr. Murphy, "I would see him there." I told him November, December, and January, some forty or fifty times or more, on a daily basis sometimes, anywhere from, I think he said, 3:00 in the evening until 6:00 in the morning. He was there with known drug violators at Tim's Motel which is right next to the Hollywood Lounge. And he can't be in Jackson County and he can't be in Gulfport at the same time. (R. 298).

B.
For this Court to consider claims of alleged erroneous comments of the prosecuting attorney in closing arguments, a contemporaneous objection must have been made; otherwise, the point is deemed waived. Livingston v. State, 525 So.2d 1300, 1307 (Miss. 1988); Monk v. State, 532 So.2d 592, 600 (Miss. 1988); Lanier v. State, 533 So.2d 473, 478 (Miss. 1988); Gray v. State, 487 So.2d 1304, 1312 (Miss. 1986); Messer v. State, 483 So.2d 338, 340 (Miss. 1986); Shavers v. State, 455 So.2d 1299, 1302 (Miss. 1984). However, "if a comment is so inflammatory that the trial court should have objected on his own motion, the point may be considered." Gray at 1312. Accord Livingston v. State, 525 So.2d 1300, 1307 (Miss. 1988); Monk v. State, 532 So.2d 592 (Miss. 1988); Clemons v. State, 320 So.2d 368 (Miss. 1975); Griffin v. State, 292 So.2d 159 (Miss. 1974).
Upon close examination of the record of closing arguments, we find no contemporaneous objection made by Handley's attorney at any point; nor do we find any of the comments by the prosecuting attorney to be inflammatory. Accordingly, this assignment has no merit.

V.

Did the State Violate Its Own Motion in Limine?
On February 7, 1986, the State filed a Motion in Limine to prevent injection into the trial (1) the possible sentence which could be imposed upon Handley and (2) the failure of the State to call witnesses that were equally available to both parties. On the first day of trial, June 15, 1987, following jury selection and prior to the first witness being called, the State orally moved to amend the motion to include any comments regarding the previous mistrial. The trial court sustained the State's Motion in Limine.
Handley contends that the prosecuting attorney violated this motion and ruling during closing argument when he said:
Ladies and gentlemen, you know these two convicted felons are in jail with this man up in Harrison County, and as one of them told you, he talked to him; Mr. Murphy. They're friends. They can't lose anything by lying for him. Come up here and we'll help you out. We're all in the same boat, we've all been convicted by the State. Let's get them back. This man is looking at going to the penitentiary, in the Court's discretion. That's up to his Honor, should you convict him. (emphasis added)
However, in his brief Handley states: "The incident itself does not by itself constitute a reversible error ... . but it is error and may be considered with such other errors for its cumulative prejudice." Having conceded no reversible error in this assignment, we find that this assignment has no merit.

VI.

Did the Proof of Prior Convictions Enhancement Sustain the Charge?

A.
Handley was indicted as an habitual offender. Following his conviction, a hearing was held pursuant to Rule 6.04 of the Uniform Criminal Rules of Circuit Court Practice to determine Handley's status. At the *680 conclusion of the hearing Handley was sentenced as an habitual offender.
Handley presents two (2) arguments for reversal under this assignment: (1) the constitutionality of both of Mississippi's habitual offender statutes, § 99-19-81 and § 99-19-83 and (2) the validity of the previous convictions. He relies on Phillips v. State, 421 So.2d 476 (Miss. 1982) and Bandy v. State, 495 So.2d 486 (Miss. 1986).

B.
This Court, as well as the Fifth Circuit, has previously upheld the constitutionality of § 99-19-81 and § 99-19-83. See Perkins v. Cabana, 794 F.2d 168, cert. den. 479 U.S. 936, 107 S.Ct. 414, 93 L.Ed.2d 366 (5th Cir.1986); Sutherland v. State, 537 So.2d 1360 (Miss. 1989); Davis v. State, 510 So.2d 794 (Miss. 1987); Bandy v. State, 495 So.2d 486 (Miss. 1986); Jackson v. State, 483 So.2d 1353 (Miss. 1986); Jenkins v. State, 483 So.2d 1330 (Miss. 1986); Bridges v. State, 482 So.2d 1139 (Miss. 1986); McQueen v. State, 473 So.2d 971 (Miss. 1985); Osborne v. State, 404 So.2d 545 (Miss. 1981). This argument has no merit.

C.
This Court addressed the proper procedure to be followed by the trial court when confronted with the use of foreign convictions for the purposes of determining habitual offender status when those convictions are challenged by the defendant in Phillips v. State, 421 So.2d 476 (Miss. 1982):
At a hearing conducted by a trial court pursuant to Mississippi Uniform Criminal Rules of Circuit Court 6.04, for determining the defendant's status as an habitual offender, the prosecution must show and the trial court must determine that the records of the prior convictions are accurate, that they fulfill the requirements of § 99-19-81, supra, and that the defendant sought to be so sentenced is indeed the person who was previously convicted. ...
Once the above mentioned factors have been ascertained, the trial court is not required to go beyond the face of the prior convictions sought to be used in establishing the defendant's status as an habitual offender... .
In fulfilling its mission to determine whether a prior conviction is constitutionally valid for the purpose of enhancing a defendant's sentence, the trial court must not be placed in position of "retrying" the prior case. Certainly any such frontal assault upon the constitutionality of a prior conviction should be conducted in the form of an entirely separate procedure solely concerned with attacking that conviction. This role is neither the function nor the duty of the trial judge in a hearing to determine habitual offender status. Likewise, any such proceeding should be brought in the state in which such conviction occurred, pursuant to that state's established procedures.

Id. at 481-82. (emphasis added).
Applying the Phillips factors shows the following:

1. Accuracy of Records Showing Prior Convictions
At the Rule 6.04 hearing, the State introduced a certified and exemplified "pen packet" from the State of Ohio showing the following convictions:
(1) Complicity in aggravated robbery to which Handley plead guilty on April 22, 1975, and was sentenced to a term of 4 to 25 years; State's Exhibit # 1;
(2) Burglary, to which Handley plead guilty on December 30, 1974, and was sentenced to a term of 5 to 15 years; State's Exhibit # 2;
(3) Manslaughter, to which Handley plead guilty on February 19, 1969, and was sentenced to a term of 1 to 20 years, State's Exhibit # 3; and
(4) Assault with intent to rob, arising out of the same incident as the manslaughter charge, to which Handley plead guilty on February 19, 1969, and was sentenced to a term of 1 to 15 years, to be served consecutively with the manslaughter sentence; State's Exhibit # 4.
Handley objected to the use of these prior convictions. Following the arguments *681 of counsel, the trial court deferred its findings on the prior convictions and recessed the hearing for the evening. The trial court articulated its reasons for taking this action: "Well, I owe it to this defendant to be as accurate as I possibly can. I'm not going to sentence this man to jail forever on a defective conviction. I want to be very sure that he has all of his rights, substantive as well as procedural."
The hearing was reconvened on June 17, 1987, at which time the trial court found that State's Exhibits 1, 2 and 3 were certified and exemplified. The trial court gave no weight to State's Exhibit # 4, a computer printout, because it was unable to interpret the printout.

2. Prior Conviction Records Fulfill the Requirements of the Habitual Offender Statute
At the sentencing hearing the prosecuting attorney represented to the trial court that Handley had been indicted under, and they were traveling under, § 99-19-83. That section reads:
Every person convicted in this state of a felony who shall have been convicted twice previously of any felony or federal crime upon charges separately brought and arising out of separate incidents at different times and who shall have been sentenced to and served separate terms of one (1) year or more in any state and/or federal penal institution, whether in this state or elsewhere, and where any one (1) of such felonies shall have been a crime of violence shall be sentenced to life imprisonment, and such sentence shall not be reduced or suspended nor shall such person be eligible for parole or probation.
The trial court made the following findings regarding the prior convictions:
(1) Complicity in aggravated robbery. (State's Exhibit # 1) The exhibit was accepted into evidence; aggravated robbery is a crime of violence; it was not evident from the record that Handley had served one (1) year.
(2) Burglary. (State's Exhibit # 2) The exhibit was accepted into evidence; it was not evident from the record that Handley had served one (1) year.
(3) Manslaughter. (State's Exhibit # 3) The exhibit was accepted into evidence only insofar as it related to the conviction; the sentence served was not admitted because the cause number on the certificate did not correspond with the cause number on the indictment.
(4) Assault with intent to rob. (State's Exhibit # 4) The exhibit (a computer printout) was admitted into evidence but given no weight because the printout could not be deciphered.
Based on the preceding findings, the trial court found that the evidence of Handley's prior convictions introduced by the State did not meet the requirements of § 99-19-83. However, the trial court found the evidence presented met the requirements of § 99-19-81 and proceeded to sentence Handley accordingly. The validity of this procedure is discussed in the next assignment of error.
Section 99-19-81 reads:
Every person convicted in this state of a felony who shall have been convicted twice previously of any felony or federal crime upon charges separately brought and arising out of separate incidents at different times and who shall have been sentenced to separate terms of one (1) year or more in any state and/or federal penal institution, whether in this state or elsewhere, shall be sentenced to the maximum term of imprisonment prescribed for such felony, and such sentence shall not be reduced or suspended nor shall such person be eligible for parole or probation.

3. Identity of the Defendant
The Defendant/Appellant in the case sub judice is James Lee Handley. The evidence of prior convictions contained references to a James L. Handley, James A. Handley, and James Handley. The trial court responded to these inconsistencies:
I want the record, too, to reflect that in this pen packet there are inconsistencies and incongruities that ought to have *682 been resolved before this packet left Ohio. To give Mr. Cox a packet like this and expect him to use it to its maximum is an imposition on Mr. Cox or any other prosecutor, and I refer specifically to the identification in some of this correspondence of this defendant as Mr. James A. Handley when, in fact, he's James Lee Handley. I resolve that in my own mind because his Ohio Department of Corrections serial number seems to be the same and his date of birth seems to be the same throughout.
We find, based on the foregoing, that all of the Phillips factors were met in the case sub judice and, therefore, this argument has no merit.

VII.

Was the State's Attempt to Switch from Section 99-19-83 to 99-19-81 Improper?

A.
The discussion in the immediately preceding assignment of error sets out the facts applicable to this assignment and for that reason will not be reiterated herein. Based on the discussion in Assignment VI it is apparent that the State did not "attempt" to switch from § 99-19-83 to § 99-19-81; it actually occurred; therefore, the appropriate heading for this assignment would be: "Was the State's Switch from Section 99-19-83 to 99-19-81 Improper?"
Handley contends that the change from § 99-19-83 to § 99-19-81 was improper for several reasons: (1) no formal amendment request for the amendment, nor order allowing the amendment, appears in the record; (2) he had no notice of the proposed amendment; (3) the amendment took him by surprise and did not allow him adequate opportunity to prepare for the hearing; (4) the amendment was of substance rather than form; (5) the amendment constituted a denial of due process. Additionally, even though Handley concedes that it was not necessary for the State to specify which habitual offender section it was traveling under, citing to Ellis v. State, 469 So.2d 1256 (Miss. 1985), he argues that the indictment did not contain a reference to the specific habitual offender statute the State was traveling under and therefore, he was "unable to `glean' from the indictment that which he must defend against." (emphasis in original). Handley also concedes that "the record is absent of any objection appearing specifically to objecting to proceeding under 99-19-81."

B.
This Court has repeatedly held "that contemporaneous objection is necessary to preserve the right to raise an error on appeal." Singleton v. State, 518 So.2d 653, 655 (Miss. 1988) and cases cited therein. See also Livingston v. State, 525 So.2d 1300, 1307 (Miss. 1988); Monk v. State, 532 So.2d 592, 600 (Miss. 1988); Lanier v. State, 533 So.2d 473, 478 (Miss. 1988); Gray v. State, 487 So.2d 1304, 1312 (Miss. 1986); Messer v. State, 483 So.2d 338, 340 (Miss. 1986); Shavers v. State, 455 So.2d 1299, 1302 (Miss. 1984). Handley concedes the lack of contemporaneous objection to the trial court's allowance of an amendment from § 99-19-83 to § 99-19-81 in his brief. Accordingly, we find that Handley is procedurally barred from raising this assignment of error.

VIII.

Was the Defendant Represented by Competent Counsel?

A.
Handley contends that he was represented by incompetent counsel at retrial and sentencing. His counsel at retrial and sentencing was Douglas R. Ainsworth of Gulfport, Mississippi. Ainsworth also represented Handley at the hearing on his JNOV motion. The claim of ineffective assistance was not raised in this hearing.
Handley argues he was denied a fair trial as a result of ineffective assistance. He argues ineffective assistance because trial counsel failed to:
1. Confer with prior trial counsel, Ms. Karen Young, to educate himself as to the intricacies of this case... .

*683 2. Properly prepare the defense witnesses after making a judgment evaluation that they should or should not have been called;
3. By basing his entire defense of [sic] that of alibi, and then failing to put in an alibi instruction;
4. By not properly preparing for cross examination of the expert witness that was put on by the State;
5. By not vigorous [sic] challenging any and all of the State's witnesses, opinions and/or hearsay testimony, particularly in regard to one officer testifying as to what a second officer saw and understood;
6. Failing to properly investigate and/or present character witnesses;
7. Failed to present meaningful arguments to the sentencing judge.
It is uncontested that this assignment is controlled by Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). At issue is whether the Strickland test for ineffective assistance was met.

B.
When faced with a claim of ineffective assistance of counsel at trial or sentencing, this Court follows the test set down in Strickland, supra. Leatherwood v. State, 539 So.2d 1378 (Miss. 1989); Cabello v. State, 524 So.2d 313 (Miss. 1988); Byrd v. State, 522 So.2d 756 (Miss. 1988); Merritt v. State, 517 So.2d 517 (Miss. 1988); Wiley v. State, 517 So.2d 1373 (Miss. 1987); King v. State, 503 So.2d 271 (Miss. 1987); Evans v. State, 485 So.2d 276 (Miss. 1986); Caldwell v. State, 481 So.2d 850 (Miss. 1985); Leatherwood v. State, 473 So.2d 964 (Miss. 1985); Lambert v. State, 462 So.2d 308 (Miss. 1984); Thames v. State, 454 So.2d 486 (Miss. 1984). This Court set out the test and standards in Cabello v. State, 524 So.2d 313 (Miss. 1988):
In Strickland v. Washington, 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674, 693 (1984), the United States Supreme Court established a two-prong test, required to prove the ineffective assistance of counsel: the defendant must show that counsel's performance was deficient and that the deficient performance prejudiced the defense... . The burden of proof then rests with the movant... .
Under the first prong, there is a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." .. . In short, defense counsel is presumed competent.
Under the second prong, even if counsel's conduct is "professionally unreasonable," the judgment stands "if the error had no effect on the judgment." ... Consequently, the movant must show that there is a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." ... There is no constitutional right then to errorless counsel... .
Id. at 315. (citations omitted). Handley's claims are now addressed in the order presented utilizing these standards.

1. Failure to confer with prior counsel.

The record contains no evidence that Ainsworth failed to confer with Handley's first counsel. Absent a record, Handley has failed to show that the alleged failure constituted deficient performance and, therefore, this argument has no merit.

2. Failure to properly prepare defense witnesses.

Ainsworth called three (3) alibi witnesses in his case in chief: (1) Albert Marshall, who testified that Handley was picking him up from work in Ocean Springs when the alleged sale was being made; (2) Albert Murphy, a resident of Tim's Motel which is located next to the Hot Spot Lounge in Gulfport, who testified that Handley was at his residence at the time of the alleged sale; and (3) Debra Lafayette, Handley's step-daughter, who testified that he was in bed at her mother's house in Ocean Springs at the time of the alleged sale.
*684 Ainsworth called two (2) witnesses in Surrebuttal: (1) Debra LaFayette, who testified that Handley never wore a beard; and (2) J.W. Langford, who testified that he had seen Handley 40 to 50 times prior to the day of the alleged sale and knew him very well. J.W. Langford, a former narcotics officer with the Harrison County Sheriff's Office who cooperated with the MBN in the sale, was the State's first witness in chief. The record contains no evidence that Ainsworth failed to meet with and/or confer with these witnesses prior to their taking the witness stand. We find that this argument has no merit. See Evans v. State, 485 So.2d 276 (Miss. 1986).

3. Failing to submit an alibi instruction.

Handley presented an alibi defense at retrial. The record shows that Ainsworth did not submit an alibi instruction. However, the trial court, sua sponte, submitted an alibi instruction on behalf of Handley, thereby alleviating any prejudice to Handley. Therefore, this argument has no merit.

4. Failure to properly prepare for cross examination of State witnesses.

The record contains no evidence that Ainsworth failed to properly prepare for cross examination. Absent a record, Handley has failed to show that the alleged failure constituted deficient performance and, therefore, this argument has no merit.

5. Failure to interpose objections.

This Court has said that "the failure to object could have represented a strategic decision to avoid additional comment." Cabello, 524 So.2d at 318. "[S]ince "there is `no single, particular way to defend a client or to provide effective assistance,' and courts are `reluctant to infer from silence an absence of strategy,'"" Id. at 317, this argument has no merit.

6. Failure to investigate and present character witnesses.

Decisions of counsel are presumed to be strategic. Cabello, 524 So.2d at 319; Leatherwood, 473 So.2d at 969. Counsel for a defendant is under no duty to present mitigating evidence. Cabello, 524 So.2d at 319 and cases cited therein. This argument has no merit.

7. Failure to present meaningful argument to the sentencing judge.

The record shows that at the sentencing hearing Ainsworth objected to the introduction of the State's evidence of prior convictions, pointed out discrepancies in the State's evidence, argued his position, timely renewed his objections after the trial court ruled and presented the trial court with authority in support of his arguments. Ainsworth was partially successful. See discussion in Section IV, supra. This argument has no merit.

8. Failure to inform trial court of death of Allen Murphy.

The record shows that Albert, not Allen, Murphy, testified as an alibi witness at Handley's retrial. The person who expired prior to the retrial was one Fritz Allen, a man who physically resembled Handley. This argument has no merit.
On the basis of the foregoing discussion, Handley has failed to meet his burden under the Strickland test and therefore, we find that this assignment has no merit.
Having found no merit in any of Handley's assignments of error, the conviction of sale of a controlled substance and sentence under Miss. Code Ann. § 99-19-81 are hereby affirmed.
CONVICTION OF SALE OF A CONTROLLED SUBSTANCE AND SENTENCE AS AN HABITUAL OFFENDER PURSUANT TO MISS. CODE ANN. § 99-19-81 TO THIRTY (30) YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS AFFIRMED.
ROY NOBLE LEE, C.J., HAWKINS, P.J., and PRATHER, ANDERSON and BLASS, JJ., concur.
*685 ROBERTSON, SULLIVAN and PITTMAN, JJ., dissent without written opinion.