809 So.2d 728 (2001)
Forrest Scott MABUS a/k/a Scott Mabus, Appellant,
v.
STATE of Mississippi, Appellee.
No. 2000-KA-01574-COA.
Court of Appeals of Mississippi.
December 18, 2001.
Rehearing Denied March 5, 2002.
*730 Thomas Michael Reed, Hattiesburg, Attorney for Appellant.
Office of the Attorney General, by Billy L. Gore, Attorneys for Appellee.
Before SOUTHWICK, P.J., BRIDGES, and CHANDLER, JJ.
SOUTHWICK, P.J., for the Court.
¶ 1. Forrest Scott Mabus was found guilty of statutory rape by a Lamar County Circuit Court jury. On appeal, Mabus alleges that the evidence does not support conviction, that important testimony was improperly excluded, that the prosecutor's comments during closing argument were prejudicial, and that the cumulative effect of the various errors constituted a violation of due process. We fail to find that any of Mabus' assertions of error have merit. Consequently, we affirm.

STATEMENT OF FACT
¶ 2. Forrest Scott Mabus was twenty-nine years of age at the time of the events for which he was prosecuted. Mabus and his family of five lived on property owned by a relative in a double wide trailer several hundred yards from the relative's residence. Because of the nature of the crime charged, we will use fictitious names for these relatives. We will refer to the relatives as the "Smith" family and their daughter we will call "Susan."
¶ 3. At the time of this incident, Susan was fifteen years old and in the tenth grade. On Saturday, April 3, 1999, Mabus went to the Smith's residence and asked if Susan would go to his house and watch his two small children while he worked on his vehicle. Susan, who was sunbathing at the time, told Mabus that she would have to get permission from her mother. Mabus said that she could continue to sunbathe at his house while she watched the children. Susan's mother approved. Mabus and the girl walked to his trailer.
¶ 4. It is at this point that Mabus' explanation and that of Susan's sharply diverge. First we will look at Susan's testimony. She said that after they arrived at the Mabus trailer, she positioned the infant where she could observe him while she continued to sunbathe in the backyard. After several minutes the infant began to cry. Hearing this, Mabus asked Susan to come inside to be nearer the child. Mabus immediately told Susan that if she wanted to take a bath, she could do so. She responded that she would just wipe off some of the sun tan lotion. When Susan went to one bathroom in order to wipe the lotion off, Mabus suggested that she take a bath in his bathroom where he had already laid out a towel for her.
¶ 5. Susan went into Mabus' bathroom and showered. When she finished dressing, Mabus asked if she would assist him in running the video recorder. She agreed. Mabus told her that this video would be for his wife. Mabus then took *731 off his clothes and started rubbing oil all over his body. When he was completely naked, he told Susan to come to where he was standing and rub his penis. Susan testified that she complied out of fear and confusion. Mabus then ordered Susan to take off all of her clothes and lay on the bathroom floor. Again Susan complied. She testified that Mabus then got on top of her and had sexual intercourse without her permission. She screamed and pleaded for Mabus to stop. When Mabus finished, he made her again rub his penis.
¶ 6. Susan got dressed. Before she left, Mabus told her not to tell anybody about what happened. She left Mabus' trailer, went home, showered and then went to work. Two days later on Monday while at school, Susan revealed to a close friend that she had been raped by Mabus. On the following Thursday, Susan told her mother what had happened. Susan's mother immediately informed her husband, and they both reported the incident to the police.
¶ 7. Susan was examined by Dr. Brian Archer, an emergency room physician at Forrest General Hospital. Mabus was subsequently arrested and charged with statutory rape.
¶ 8. Mabus testified to an entirely different version of events. He admits asking Susan to help with his children. He denied that any sexual activity occurred or that either of them disrobed. Instead, after Susan made sandwiches, they talked for approximately an hour and she then left to go to work. Mabus said that he first learned of the accusation from a law enforcement officer.
¶ 9. Mabus was found guilty of statutory rape and appeals.

DISCUSSION

I. Sufficiency and Weight of Evidence
¶ 10. The first three assertions of error all discuss the adequacy of the evidence to sustain this conviction. For clarity, we will discuss those issues together.
¶ 11. These were divided into multiple issues in part because Mabus attacks sufficiency of the evidence in two ways. First, he makes the general argument that the evidence was insufficient. Then he argues that his directed verdict motion should have been granted. As Mabus himself points out, though, our appellate task is to review the total quantum of evidence at the last time that a motion such as this was presented below. It is improper to examine the level of evidence at each earlier stage of the trial at which such a motion was presented and denied, and reverse if at any point there was a shortfall. Wetz v. State, 503 So.2d 803, 807-8 n. 3 (Miss. 1987).
¶ 12. The final such motion was the one requesting a judgment notwithstanding the verdict. We thus look at all the evidence presented at the trial and considered by the jury. In determining whether there is an insufficiency, we examine all the evidence in the light favorable to the State, accepting the credible evidence that is consistent with guilt, and making reasonable inferences from the evidence that are consistent with the verdict. Only if after examining the evidence in that way we become convinced that no reasonable juror could have found guilt beyond a reasonable doubt are we to reverse. McClain v. State, 625 So.2d 774, 778 (Miss.1993).
¶ 13. There are inconsistencies and weakness in the evidence that Mabus contends invalidates the conviction. First, Mabus points out that Susan testified that she was screaming throughout the rape. This is said to be contradicted by the fact that there were two minor children present in the trailer at that time who never *732 said that they heard such screams. However, both these children were then under six years of age, with one being an infant. They did not testify.
¶ 14. Mabus also contends that Susan's mother was at her nearby residence and never heard screams. The record demonstrates that Mabus's trailer was several hundred yards from the Smith residence. It is perfectly plausible that Susan's screams fell on "deaf ears" because her mother was too far away and had closer noises around her. Though Susan's mother did not hear any screams, she testified that her daughter acted drastically different than normal after having visited Mabus.
¶ 15. Mabus finds further weakness in the evidence by pointing out that at trial Susan's mother named a different friend than the one Susan claimed was the person she first confided in after the rape. Jurors would be within their discretion to find that difference to be based on faulty memories, the stress of the trial, or other innocent sources.
¶ 16. Finally, Mabus emphasizes that there was little physical evidence of the crime. No blood or semen was found anywhere that linked Mabus to the crime. Five days elapsed before Susan was examined by a physician. Much evidence in that time would have been washed away. Dr. Archer testified that over half of his patients who alleged that they were raped have no physical evidence. His examination of Susan revealed an imperforate hymen and a small abrasion near the entrance of the vagina which he stated was consistent with sexual abuse or non-consensual sex.
¶ 17. Mabus may have demonstrated some inconsistencies or contradictions in the evidence. We do not re-try the case but only review whether the evidence was sufficient to warrant a conviction. Rape is a crime by its very nature that will often have no eyewitnesses:
Our case law holds that the unsupported word of the victim of a sex crime is sufficient to support a guilty verdict where the testimony is not discredited or contradicted by other credible evidence, especially if the conduct of the victim is consistent with the conduct of one who has been victimized by a sex crime.
Cross v. State, 759 So.2d 354, 356 (Miss. 1999). There was sufficient evidence.
¶ 18. Mabus also argues that even if there was some evidence proving the crime, the overwhelming weight was contrary to the verdict. This is a separate evaluation of the level of proof in the record. Were we to agree, Mabus would not be entitled to reversal but to a new trial:
In determining whether a jury verdict is against the overwhelming weight of the evidence, this Court must accept as true the evidence which supports the verdict and will reverse only when convinced that the circuit court has abused its discretion in failing to grant a new trial. Only in those cases where the verdict is so contrary to the overwhelming weight of the evidence that to allow it to stand would sanction an unconscionable injustice will this Court disturb it on appeal.
Id.
¶ 19. The victim testified to the rape, and her word "is sufficient to support a guilty verdict where the testimony is not discredited or contradicted by other credible evidence...." Id. Credibility of witnesses is a matter left to the jury. Cross v. State, 759 So.2d 354, 356 (Miss.1999). We find no significant discrepancies in Susan's account of what occurred. The verdict was not contrary to the great weight of the evidence.

II. Prosecution's Closing Argument
*733 ¶ 20. Mabus claims that the State's closing argument was improper. However, at trial no objection to the argument was made. The contested closing statement focused on testimony that when law enforcement officers arrived without a warrant and asked to search Mabus's trailer, hoping perhaps to find the video that Susan said had been made, Mabus would not consent.
Why did he refuse? Because he knew he had that videotape in that trailer, and he did not want law enforcement getting the videotape.... David had to go through a lot of trouble to get a search warrant. He couldn't get one that night. The judge wasn't available. He couldn't get it till the next day. It gave he and his family members ample opportunity to destroy the videotape, and that's exactly what they did.
. . .
[W]e might have found that videotape if he didn't have it hidden as a trophy somewhere.
¶ 21. Failure to object to the closing argument means that there is nothing for the appellate court to review. Handley v. State, 574 So.2d 671, 679 (Miss.1990). Had a contemporaneous objection been made, the trial court could have considered the validity of the argument. If the court found that the prosecutor was overreaching from the reasonable inferences from the facts, the objection would have been sustained and potentially a cautionary instruction given the jury.
¶ 22. Absent any objection being made, we find no reversible error in this argument.

III. Testimony Regarding Fear Of The Victim's Father.
¶ 23. Mabus refers to several places in the record in which the trial court sustained the State's objections to certain questions about Susan's father. He alleges that this prevented his exploring an alternate theory of what really happened. Specifically, Susan's fear of her father is said to be her motive for falsely accusing Mabus of rape when she actually had sexual relations with a boyfriend.
¶ 24. We start with the certainty that decisions about the relevancy and admissibility of evidence are largely within the discretion of the trial court. Parker v. State, 606 So.2d 1132, 1136 (Miss.1992). We therefore will not reverse an evidentiary ruling unless an abuse of discretion is shown, or the trial judge acted outside the rules of evidence.
¶ 25. Evidence from several witnesses about fear of Susan's father and his threats against anyone who would cause her harm was presented to the jury. We find no error in other occasions when the trial judge found that the specific question being asked was improper. In fact, Mabus does not attempt to demonstrate how any particular evidentiary rulings were in error. He just states that he was prevented from presenting his alternative theory to the jury. He was not.

IV. Cumulative Error
¶ 26. Mabus' final assertion is that even if we determine that none of the alleged errors standing alone warrant reversal, the cumulative effect of the above cited errors does require reversal. Instead, we hold that since "there was no reversible error in any part, so there is no reversible error to the whole." McFee v. State, 511 So.2d 130, 136 (Miss.1987).
¶ 27. THE JUDGMENT OF THE CIRCUIT COURT OF LAMAR COUNTY OF CONVICTION OF STATUTORY RAPE AND SENTENCE OF TWENTY YEARS WITH TEN YEARS SUSPENDED AND PLACED ON POST *734 RELEASE SUPERVISION IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO LAMAR COUNTY.
McMILLIN, C.J., KING, P.J., BRIDGES, THOMAS, LEE, IRVING, MYERS, CHANDLER and BRANTLEY, JJ., CONCUR.