605 So.2d 17 (1992)
Sammy Joe ROSS
v.
STATE of Mississippi.
No. 89-KA-0069.
Supreme Court of Mississippi.
July 22, 1992.
*19 Joseph C. Langston, Langston Langston Michael & Bowen, Booneville, Sarah C. Jubb, Oxford, for appellant.
Michael C. Moore, Atty. Gen., Patricia W. Sproat, Sp. Asst. Atty. Gen., Jackson, for appellee.
En Banc.
PRATHER, Justice, for the Court:

I. INTRODUCTION
This rape case arose on appeal from the September 29, 1988 judgment of the Tippah County Circuit Court, which found Ross guilty and sentenced him to life in prison. The appellant timely filed a notice of appeal on October 25, 1988, alleging constitutional and statutory speedy trial violations. The delay between Ross's arrest and trial was 378 days; the delay between arraignment and trial was 370 days. Because the state supported the delays with good cause on both constitutional and statutory grounds, the lower court's decision is affirmed.
The facts on which Ross bases his claim are shown below. The date and days since arrest appear in the left-hand column. This Court's speedy trial computations appear in the right-hand columns:

 Speedy Trial Clock
 Date Event Const'l Statutory
09/16/87 Tippah County officials arrested Ross for 0 0
Day 0 rape.
09/22/87 A Tippah County grand jury indicted Ross | |
 rape.
09/24/87 Ross waived arraignment and pled not guilty. 8 0
Day 8
*20 10/16/87 Ross moved for a change of venue. 30 22
Day 30
 Clock tolled
 59 days.
11/29/87 The court set a date of December 14, 1987, - -
 to hear Ross's change-of-venue motion.
12/14/87 The court overruled Ross's change-of-venue 30 22
 motion.
Day 89
 Ross moved for speedy trial, requesting a Clock running
 setting for the February, 1988 term. 45 days.
01/28/88 The state requested a continuance until 75 67
Day 134 the May term in order to first try a case
 against Ross in another county.[1] Clock running
 88 days.
02/18/88 The court set trial for May 12, 1988. | |
04/19/88 Ross moved to suppress identification. | |
04/21/88 The court heard motions. | |
04/25/88 Ross amended his motion to suppress 163 155
 identification.
Day 222
 Clock tolled
 25 days.
05/09/88 The court set a first back-up trial date - -
 of May 19, 1988. The court began hearing
 the amended suppression motion.
05/12/88 Trial date passed while the court heard - -
 Ross's amended suppression motion.
05/19/88 Back-up trial date passed while the court - -
 heard Ross's amended suppression motion
05/20/88 The court completed hearing Ross's amended 163 155
Day 247 suppression motion.
 Clock tolled
 129 days, until
 next court term.[2]
08/09/88 The court set a first back-up trial date
 of September 27, 1988.
09/22/88 Ross moved to dismiss for failure to timely - -
 prosecute, which he alleged violated his
 statutory right to speedy trial.
09/26/88 The court overruled Ross's motion for 163 155
 failure to
Day 376 timely prosecute and set trial for the next
 day. The court explicitly rejected Ross's
 argument that trying one case before
 another can constitute prejudice.
09/27/88 The court deferred the trial one day to 164 156
 allow the defense to prepare for a change
 in the order of causes to be heard.
09/28/88 Ross went to trial, and the next day was 164 156
Day 378 convicted of rape and sentenced to life
 in prison. 378 days had elapsed since
 arrest, 370 since arraignment.

*21 II. LEGAL ANALYSIS
Review of a speedy trial claim encompasses the fact question of whether the trial delay rose from good cause. Under this Court's standard of review, this Court will uphold a decision based on substantial, credible evidence; if no probative evidence supports the trial court's finding of good cause, this Court will ordinarily reverse. Folk v. State, 576 So.2d 1243, 1247 (Miss. 1991). The state bears the burden of proving good cause for a speedy trial delay, and thus bears the risk of nonpersuasion. Flores v. State, 574 So.2d 1314, 1318 (Miss. 1990); Vickery v. State, 535 So.2d 1371, 1377 (Miss. 1988); Beavers v. State, 498 So.2d 788, 791 (Miss. 1986); Perry v. State, 419 So.2d 194, 199 (Miss. 1982).

A. Did the delay in bringing the defendant to trial violate his right to a speedy trial as guaranteed under the United States Constitution and Mississippi Constitution of 1890?

1. Law
The Sixth Amendment to the United States Constitution and Article 3, § 26 of the Mississippi Constitution of 1890 guarantee that "[i]n all criminal prosecutions the accused shall have a right to ... a speedy and public trial." In Barker v. Wingo, 407 U.S. 514, 515, 92 S.Ct. 2182, 2184, 33 L.Ed.2d 101 (1972), the United States Supreme Court observed that the sixth amendment to the United States Constitution established a fundamental right to a speedy trial, applicable to the states through the due process clause of the fourteenth amendment. The right exists separate from the statutory right to a speedy trial. Bailey v. State, 463 So.2d 1059, 1062 (Miss. 1985); Perry v. State, 419 So.2d 194, 198 (Miss. 1982).[3]
The right attaches at the time of the accused's arrest, indictment, or information. Smith v. State, 550 So.2d 406, 408 (Miss. 1989). If the Court finds a constitutional speedy trial violation, the sole remedy is to reverse the trial court's decision and dismiss the charges. Strunk v. United States, 412 U.S. 434, 439-440, 93 S.Ct. 2260, 2263, 37 L.Ed.2d 56, 61 (1973); Barker, 407 U.S. at 522, 92 S.Ct. at 2188, 33 L.Ed.2d 101; Bailey v. State, 463 So.2d 1059, 1064 (Miss. 1985); Turner v. State 383 So.2d 489 (Miss. 1980); Perry, 419 So.2d at 197. The remedy reflects the underlying rationale that the "amorphous quality" of the right and irrevocable personal harms attending denial of the right render any other remedy ineffective. Strunk, 412 U.S. at 438-39, 93 S.Ct. at 2263, 37 L.Ed.2d 56; Barker, 407 U.S. at 522, 92 S.Ct. at 2188, 33 L.Ed.2d 101.
The Barker decision articulated four factors for analyzing the state's compliance with constitutional speedy trial requirements. Barker, 407 U.S. at 530, 92 S.Ct. at 2191, 33 L.Ed.2d 101. The four Barker factors, to be balanced in light of all surrounding circumstances, are: (1) length of delay; (2) reason for delay; (3) defendant's assertion of the right to a speedy trial; and (4) prejudice to the defendant resulting from delay. Id.; see also Adams v. State, 583 So.2d 165, 167 (Miss. 1991); State v. Ferguson, 576 So.2d 1252, 1254-55 (Miss. 1991); Handley v. State, 574 So.2d 671, 674 (Miss. 1990); Vickery, 535 So.2d 1371, 1376 (Miss. 1988); Dedeaux v. State, 519 So.2d 886, 888 (Miss. 1988). The speedy trial analysis must turn on the facts of the particular case, the evidence supporting each factor or, barring any evidence, *22 identification of the party bearing the risk of non-persuasion; no sole factor is dispositive. Jaco v. State, 574 So.2d 625, 630 (Miss. 1990).

a. Length of delay
The United States Constitution does not demand a specific number days to satisfy speedy trial requirements; a state may prescribe its own constitutionally consistent standard. Barker, 407 U.S. at 523, 92 S.Ct. at 2188, 33 L.Ed.2d at 112-13. Under Barker, the defendant must have been subjected to a presumptively prejudicial delay in order to warrant further inquiry. Barker, 407 U.S. at 530, 92 S.Ct. at 2192, 33 L.Ed.2d at 117. Under Mississippi law, a delay of eight months is presumptively prejudicial. Smith, 550 So.2d at 408. Cf. United States v. Maizumi, 526 F.2d 848 (5th Cir. [Tex.] 1976), cited in United States v. Harvey, 897 F.2d 1300, 1302 (5th Cir. [Tex.] 1990), cert. denied, Harvey v. United States, ___ U.S. ___, 111 S.Ct. 568, 112 L.Ed.2d 574 (ten and one-half months between arraignment and trial not presumptively prejudicial, but neither were other Barker factors met). In the case of a lesser delay, this Court's decisions have dictated that the defendant demonstrate the strength of the other Barker factors, particularly prejudice. Smith, 550 So.2d at 409.

b. Reason for delay
The basic rule governing reason for delay is twofold: the state must prove either that the defendant prompted the delay or that the state did, but with good cause. Wiley v. State, 582 So.2d 1008, 1012 (Miss. 1991); see also Flores v. State, 574 So.2d at 1318; Vickery, 535 So.2d at 1375, 1377. Once the state establishes that the reason for delay justifies tolling the clock, the clock is tolled until the next reasonably available term of court. See Nations v. State, 481 So.2d 760, 762 (Miss. 1985); State v. Davis, 382 So.2d 1095, 1097 (Miss. 1980).
A bad motive on the prosecution's part significantly affects the balancing test. Perry, 419 So.2d at 199. To determine if a state-prompted delay lacked good cause, the United States Supreme Court articulated the rule that "[a] deliberate attempt to delay the trial in order to hamper the defense should be weighed heavily against the government." Barker, 407 U.S. at 531, 92 S.Ct. at 2192, 33 L.Ed.2d at 117 (citing United States v. Marion, 404 U.S. 307, 325, 92 S.Ct. 455, 466, 30 L.Ed.2d 468 (1971)); see also Williamson v. State, 512 So.2d 868, 877 (Miss. 1987) (analyzing state's intentionally delaying trial may weigh against the state). In Marion, the United States Supreme Court acknowledged that an intentional delay by the prosecution in order to gain a tactical advantage would constitute an improper reason for delay. Marion, 404 U.S. at 325, 92 S.Ct. at 466, 30 L.Ed.2d 468. See also Pollard v. United States, 352 U.S. 354, 361, 77 S.Ct. 481, 485-86, 1 L.Ed.2d 393 (1957) (purposeful or oppressive prosecutorial delay constitutes unconstitutional deprivation of rights).
In comparison, the Barker v. Wingo Court found no error where the State deliberately delayed Barker's trial for more than five years while it tried his alleged accomplice; the state had hoped to gain testimony useful in prosecuting Barker. But because Barker did not want a speedy trial and made no motion for one until the state's twelfth continuance, and because Barker demonstrated no prejudice to his defense, the Court found no speedy trial violation. Barker v. Wingo, 407 U.S. at 516-518, 534, 92 S.Ct. at 2185-86, 2194, 33 L.Ed.2d 101.
In the particular circumstance of a delay caused by a crowded or congested docket, the delay weighs against the state, but less heavily. Barker, 407 U.S. at 531, 92 S.Ct. at 2192, 33 L.Ed.2d 101, quoted in Bailey, 463 So.2d at 1063. This Court has implied, however, that a delay caused by the grand jury calendar might not withstand a showing of prejudice. Bailey, 463 So.2d at 1062.
As noted above, delay attributable to the defendant also tolls the constitutional speedy trial clock. Wiley v. State, 582 *23 So.2d at 1012; Flores v. State, 574 So.2d 1314, 1319 (Miss. 1990), Vickery, 535 So.2d at 1377; Perry, 419 So.2d at 199. While this Court has observed that a defendant's "good-cause" delay tolls the clock, see, e.g., Wiley, 582 So.2d at 1012, the dispositive factor is simply whether or not the defendant caused the delay, regardless of its merits. See Corley v. State, 584 So.2d 769, 771 (Miss. 1991) (defendant's continuances generally toll 270-day clock); see also Handley v. State, 574 So.2d 671, 674 (Miss. 1990) (any delays caused by the defendant toll the clock). Cf. Flores v. State, 586 So.2d 811, 813 (Miss. 1991) (where the defendant requested a continuance, but only because the state failed to produce discovery material, the clock will not be tolled). The speedy trial policy is supported by the rule that any defendant-prompted delay, regardless of merit, tolls the clock: the speedy trial remedy is meant to address the harm visited on the defendant because of the state's delay in bringing the defendant to trial.

c. Assertion of the right to speedy trial
While the state bears the burden of timely bringing the accused to trial, Barker v. Wingo, 407 U.S. at 527, 92 S.Ct. at 2190, 33 L.Ed.2d 101; Vickery, 535 So.2d at 1377; Perry, 419 So.2d at 199, the circumstances weigh more heavily in the defendant's favor if the defendant asserts the right. Barker, 407 U.S. at 531-32, 92 S.Ct. at 2192-93, 33 L.Ed.2d 101 (failure to assert the right makes it difficult for defendant to prove denial or right); Adams v. State, 583 So.2d 165, 170 (Miss. 1991); Jaco, 574 So.2d at 632; Fisher v. State, 532 So.2d 992, 996 (Miss. 1988). Cf. Trotter v. State, 554 So.2d 313, 317 (Miss. 1989).

d. Prejudice
Prejudice to the defendant may take several forms. First, delay may prejudice the outcome of the defendant's case. Barker, 407 U.S. at 532, 92 S.Ct. at 2193, 33 L.Ed.2d 101; Jaco, 574 So.2d at 632; see also Perry, 419 So.2d at 199-200; Wells v. State, 288 So.2d 860, 863 (Miss. 1974). The United States Supreme Court has recognized "the real possibility of prejudice inherent in any extended delay: that memories will dim, witnesses become inaccessible, and evidence be lost... ." The defendant must prove that this prejudice impaired a fair trial outcome; otherwise, such a claim is speculative. Marion, 404 U.S. at 325, 92 S.Ct. at 466, 30 L.Ed.2d 468.
Prejudice may take a second form, that of harm to the defendant's personal interests. Jail is often "dead time." Barker, 407 U.S. at 532, 92 S.Ct. at 2193, 33 L.Ed.2d 101. In Moore v. Arizona, 414 U.S. 25, 26-27, 94 S.Ct. 188, 189-190, 38 L.Ed.2d 183 (1973), the Supreme Court acknowledged the debilitating effect of delay on a defendant's financial, societal, and emotional circumstances. See also Strunk v. United States, 412 U.S. 434, 439, 93 S.Ct. 2260, 2263, 37 L.Ed.2d 56, 61 (1973); Jaco, 574 So.2d at 632-33; Trotter, 554 So.2d at 318.
Thirdly, lengthy pretrial incarceration may be unnecessarily oppressive and may pose societal disadvantages. Barker, 407 U.S. at 532, 92 S.Ct. at 2193, 33 L.Ed.2d 101.
A defendant's assertion of prejudice attributable solely to incarceration, with no other harm, typically is not sufficient to warrant reversal. Williamson, 512 So.2d at 877; see also Russell v. Lynaugh, 892 F.2d 1205, 1215 (5th Cir. [Miss.] 1989) (the accused could not claim that longer period of incarceration compounded his anxiety, since he was already serving a sentence for another crime). This Court, in Ferguson, recently held that, once the defendant has passed the threshold of presumptive prejudice, the burden falls on the state to disprove that prejudice. State v. Ferguson, 576 So.2d 1252, 1255 (Miss. 1991).

2. Application
A Barker application fits this case, since the 378-day delay from arrest to trial constituted a presumptively prejudicial delay under Mississippi's Smith holding. The analysis must, then, proceed to the other three Barker factors, in which the state bears the burden of proving no prejudice to the defendant.

*24 a. The four months following arrest
The period of time following arrest could technically be charged to the state, since the clock began ticking at arrest. Ross indicated his lack of readiness when he moved for a change of venue on October 16, 1987. This act tolled the clock until his motion could reasonably be heard, which occurred on December 14. Since Ross prompted this delay, as he acknowledged in his brief, the delay tolled his constitutional speedy trial clock for 59 days. At the change-of-venue hearing, however, Ross asserted his speedy trial right and asked for a February date. The clock resumed running.

b. The January 18, 1988 continuance
The state argues that this continuance was for good cause and should toll the speedy trial clock. Given the fact that the state requested this continuance solely for its prosecutorial tactical advantage, its argument cannot be supported in this speedy trial analysis.
Ross alleges that the state delayed his Tippah County case solely so it could first try the strong, Union County case.[4] The court acknowledged this fact. While this case does not represent prosecutorial sabotage, it represents intentional, tactical delay after the defendant had already asserted his speedy trial right. By way of comparison, the Barker Court found no speedy trial violation after five years of a similar tactical delay; in that case however, the defendant did not assert his speedy trial right until after the prosecution's twelfth continuance. Here, Ross demonstrated his willingness to go to trial, and the continuance delayed his doing so.
Given the policy goal of speedy trial, simply, that defendants should not wait for trial longer than they have to, this delay should be charged to the state. This conclusion does not signify that the state's action was improper in terms of the state's authority. It simply means that, if the state made any tactical choice not motivated by a compelling need to advance the cause of justice in the instant case, and the defendant had already requested speedy trial, and the delay helped push the defendant past a reasonably available trial date, the state should bear the burden. Barring any evidence of bad-faith attempts to undermine the defense's resources, however, this factor should not weigh heavily against the state.

3. Conclusion
Despite the fact that Ross came to trial 378 days after his arrest, his constitutional speedy trial clock ran for only 164 days, or just over five months. This delay does not warrant a reverse-and-render decision by this Court.

B. Was the defendant tried for the offense of rape over 270 days after his arraignment without a showing of good cause for the delay?
Miss. Code Ann. § 99-17-1 (Supp. 1988) provides that, without good cause and a duly granted continuance, trial must begin within 270 days of arraignment. In computing compliance with the statute, the arraignment date does not count, but the trial date and weekends do, unless the 270th day falls on a Sunday. Adams v. State, 583 So.2d 165, 167 (Miss. *25 1991); Handley v. State, 574 So.2d 671, 674 (Miss. 1990); Ransom v. State, 435 So.2d 1169, 1169-70 (Miss. 1983). If the state demonstrates good cause for the delay, the statutory clock is tolled; if the state fails to demonstrate good cause or if the record is silent, the risk of non-persuasion advances the clock against the state. Vickery v. State, 535 So.2d 1371, 1375 (Miss. 1988); Nations v. State, 481 So.2d 760, 761 (Miss. 1985). Here, too, congested courts may serve as good cause for a continuance. Adams, 583 So.2d at 167. Where the state's continuances were intended to injure the defendant's case, the delay weighs more heavily against the state. See Williamson, 512 So.2d at 876 (analyzing the 270-day rule), citing Bailey, 463 So.2d at 1063 (analyzing a constitutional speedy trial violation). As in constitutional speedy trial analysis, defendant-caused delays also toll the clock. Corley v. State, 584 So.2d 769, 771 (Miss. 1991), citing Flores v. State, 574 So.2d 1314, 1319 (Miss. 1990); Handley v. State, 574 So.2d at 674; Vickery, 535 So.2d at 1376.
In this case, for the same reasons discussed in the constitutional analysis, the defendant suffered no violation of his statutory right to speedy trial. Weighing the delays, he came to trial 156 days after his waiver of arraignment. Thus, no reverse-and-render remedy is necessary.

III. CONCLUSION
Four events caused the delay of this trial. First, the defendant moved for a change of venue, which tolled the clock. Second, the state successfully moved for a continuance, which did not toll the clock. Third, the defendant moved to suppress identification, which tolled the clock and caused the defendant to miss a trial date. Last, the missed trial date pushed the defendant's trial into the next term, several months away. Applying these conclusions to the defendant's calendar, no constitutional or statutory right to a speedy trial was denied him. The trial court's decision is affirmed.
AFFIRMED.
ROY NOBLE LEE, C.J., HAWKINS and DAN M. LEE, P.JJ., and PITTMAN, J., concur.
SULLIVAN, J., dissents with separate written opinion joined by ROBERTSON, BANKS and McRAE, JJ.
SULLIVAN, Justice, dissenting:
The majority opinion provides a speedy trial computation in which the clock is tolled on two separate occasions. The first is a period of 59 days when the defendant moved for a change of venue. That motion was denied by the court. The second tolling is a 154-day period which occurred when the defendant filed an amended motion to suppress identification.
The majority has discussed at some length the United States Supreme Court opinion of Barker v. Wingo, in which the Supreme Court delineated four factors which must be weighed when a defendant asserts a constitutional speedy trial violation. The Court stressed the importance of considering each case on an individual basis.
We regard none of the four factors identified above as either a necessary or sufficient condition to the finding of a deprivation of the right of speedy trial. Rather, they are related factors and must be considered together with such other circumstances as may be relevant. In sum, these factors have no talismanic qualities; courts must still engage in a difficult and sensitive balancing process. But, because we are dealing with a fundamental right of the accused, this process must be carried out with full recognition that the accused's interest in a speedy trial is specifically affirmed in the Constitution.
Barker, 407 U.S. at 533, 92 S.Ct. at 2193, 33 L.Ed.2d at 118-119.
In reviewing the alleged speedy trial violation, the majority provides a timetable of events which, I believe, omits certain relevant dates. I offer the following timetable:

*26
 Date Event
 09/16/87 Ross arrested by Tippah County officials.
 09/22/87 Ross indicted by Tippah County grand jury.
 09/28/87 Tippah County 6-day court term begins.
 10/16/87 Ross moved for change of venue.
 11/16/87 Tippah County 12-day court term begins.
 11/29/87 Court set December 14, 1987, as date to hear motion.
 12/14/87 Court overruled the motion. Ross moved ore tenus for speedy
 trial.
 12/21/87 Ross indicted by Union County grand jury on a separate charge of
 rape.
 01/28/88 Court entered order overruling Ross's ore tenus motion for
 setting of trial and granted State's continuance for delay of
 the Tippah County case until the Union County case would be
 tried in March.
 02/01/88 Tippah County 12-day court term begins.
 02/18/88 Court set trial in Tippah County case for May 12, 1988.
 03/07/88 Union County 12-day court term begins.
 04/19/88 Ross moved to suppress identification.
 04/25/88 Ross filed an amended motion to suppress identification.
 05/09/88 Tippah County 6-day court term begins. Court set a back-up trial
 date of May 19, 1988 in the Tippah County case and began a
 hearing on the amended motion.
 05/19/88 Court continued hearing on motion.
 06/13/88 Union County 12-day court term begins.
 06/21/88 Trial begins in Union County case.
 06/23/88 Jury verdict of guilty entered in Union County case.
 07/07/88 Ross sentenced by Union County Court to 10 years.
 08/09/88 Court set a back-up trial date of September 27, 1988 in Tippah
 County case.
 09/22/88 Ross moved to dismiss for failure to timely prosecute. State
 filed supplemental discovery which included a copy of the
 indictment and judgment of sentence in Union County case.
 09/26/88 Tippah County 6-day court term begins. Court overruled motion
 to dismiss and set trial for next day.
 09/27/88 Trial deferred one day.
 09/28/88 Tippah County case tried and Ross convicted.

Analyzing this case in terms of the four Barker factors, the majority correctly concludes that the delay was presumptively prejudicial. The majority is also correct in holding that the continuance granted to the State should be charged to the State.
However, I cannot agree with the majority's conclusion that this delay should not weigh heavily against the State. And because the trial would have been conducted at an earlier date if the State had not delayed the case, I cannot agree that the clock was tolled by the defendant's amended motion to suppress identification.
Ross moved for a speedy trial on December 14, 1987, asking for a trial setting in the February 1988 term of the Tippah County court. Seven days later, on December 21, 1987, the Union County grand jury returned an indictment against him on a separate charge of rape.
On January 28, 1988, the Tippah County court entered an order overruling the motion for a speedy trial and granting the *27 State's request for a delay in trying the Tippah County case until the Union County case could be tried in the Union County court's March 1988 term. In granting the delay, the court noted that the Tippah County term would begin on February 1, 1988, and the Union County term on March 7, 1988. The delay, the court said, would only be a delay of five weeks. The court was of the opinion "that denial of the Defendant's motion for a speedy trial in Tippah County under the particular circumstances presented herein is within the sound discretion of the trial court provided Defendant is granted a trial setting on the Union County case in the term beginning March 7, 1988." (Emphasis added). To that end, on February 18, 1988, the court set May 12, 1988, as the trial date for the Tippah County case.
The Union County court began a 12-day term on March 7, 1988. Although there is nothing in the record to indicate why, that term passed without the Union County case being tried. The next available term to try the Union County case would begin on June 19, 1988.
On April 25, 1988, Ross filed an amended motion to suppress identification. A hearing on the motion began on May 9, 1988. The court did not conclude the hearing until May 20, 1988, at which time the trial date had passed. This necessitated setting a new trial date in the next available court term, the September 1988 term.
The Union County term began on June 13, 1988, and Ross's Union County trial began on June 21, 1988. The jury verdict of guilty was entered two days later, and the Union County court sentenced Ross to ten years on July 7, 1988.
On August 9, 1988, the Tippah County court set a back-up trial date of September 27, 1988. The State filed supplemental discovery on September 22, 1988. The discovery included a copy of the indictment and the judgment of sentence in the Union County case. Ross was tried in Tippah County court on September 28, 1988, 378 days after his arrest.
The delay of the trial until the September 1988 term of the Tippah County court was a direct result of the State's request to continue the Tippah County trial until the Union County case would be tried in March. Although Ross did file an amended motion to suppress identification, he had already expressed his willingness to go to trial and had in fact asked for a trial setting in the February 1988 term of court.
The record does not contain an explanation as to why the Union County case was not tried in its March 1988 term of court as was specifically directed by the Tippah County court in its January 28, 1988 order. Instead, the Tippah County case was delayed yet again until after the Union County case was tried in the June 1988 term of court. The State was thereby able to achieve its original objective  that of delaying the Tippah County trial until the Union County case had been tried. That the State intended to use the indictment and judgment entered in the Union County case against Ross in the Tippah County case is apparent by the submission of those with its supplemental discovery materials.
With respect to a delay caused by the State, the Barker Court said that "[a] deliberate attempt to delay the trial in order to hamper the defense should be weighted heavily against the government." Barker, 407 U.S. at 531, 92 S.Ct. at 2192, 33 L.Ed.2d at 117. Here, the prejudicial effect of the delay was twofold. If Ross had taken the stand, the Union County indictment and judgment of sentence may have been allowed into evidence to impeach his credibility. Ross did not take the stand in his own behalf however, and the effect of this may have been equally prejudicial in the eyes of the jury as a statement of guilt.
I would weigh the delay heavily against the State. Additionally, I believe the court failed in its duty to bring the Tippah County case to trial as soon as it could have. This Court has said that "the primary burden is on the courts and the prosecutors to assure that cases are brought to trial." Flores v. State, 574 So.2d 1314, 1323 (Miss. 1990). In allowing the State's delay, the court agreed to the delay "provided Defendant is granted a trial setting on the Union County case in the term beginning March *28 7, 1988." However, that term passed without a trial. When the Tippah County May term began, the court should have concluded the hearing on the amended motion and conducted Ross's trial in that term of court.
Through more fault of the State than of his own, Ross was forced to wait until 378 days after arrest to be tried. I dissent from the majority's conclusion that Ross was not denied a speedy trial.
ROBERTSON, BANKS and McRAE, JJ., join this dissent.
NOTES
[1] The trial court acknowledged that the state wanted to try its stronger case, in another county, first. The court also noted the defendant's expressed desire to move ahead with the instant case, but reasoned:

[T]he delay will have practical effects on the Court's efficient and economical administration of justice which are obvious to the Court. The Defendant will suffer no prejudice of additional incarceration since he has been unable to post an appearance bond in any of the three counties where charges are pending.
[2] On May 9, 1988, Tippah County Circuit Court began a six-day regular term. Miss. Code Ann. § 99-7-13 (Supp. 1985)). The next regular term began on September 26, 1988. Id.
[3] As discussed in Flores v. State, 574 So.2d 1314, 1317 (Miss. 1990):

The Sixth and Fourteenth Amendments of the United States Constitution and Article 3, Section 26 of the Mississippi Constitution of 1890 guarantee a defendant the right to a speedy trial. In addition, Mississippi Code Ann. § 99-17-1 (Supp. 1990) requires that a defendant be brought to trial within 270 days after arraignment "unless good cause [can] be shown, and a continuance duly granted by the Court." This language is plain and unambiguous.
[4] The following table summarizes the status of convictions that Ross has appealed to this Court.

County Cause # Sent. Appeal # Status
----------------------------------------------------------------------------
Tippah 5568 Life 89-KA-0069 Rape; instant case.
Tippah 5634 15-yr 89-KA-0947 Burglary with intent to commit rape;
 affirmed, June 17, 1992.
Union 6202 10-yr 89-KA-1013 Attempted rape; reversed and rendered,
 June 17, 1992.
Prentiss 9609 10-yr 89-DA-0568 Attempted rape; affirmed by
 unpublished opinion, Feb. 26, 1992.