DICKINSON, Presiding Justice,
dissenting:
¶ 21. Michael Taylor was arrested January 8, 2007. He filed a motion for a speedy trial on August 21, 2008, and moved to dismiss on speedy-trial grounds November 6, 2008. When his trial began ■ on December 1, 2008, he asked the trial judge to address his motion to dismiss. Rather than analyze the speedy-trial issue by applying the Barker v. Wingo [3] factors, the trial judge provided the following dismissive remarks:
THE COURT: I’ll give you time to argue because I want us to hurry up and finish with this. I’m letting her make a record for it because he’s got a speedy date, and it’s going today, but I’ll let her argue the motion for her record.
¶ 22. The trial judge’s statements clearly indicate she never intended to protect— or even consider — Taylor’s speédy-trial rights. In fact, the comments evince the trial judge’s view that, in Hinds County, Taylor should be thankful he was given a trial at all.
¶ 28. Taylor’s appellate counsel did no better than the trial judge, passing on the opportunity even to brief that issue to this Court, and today’s majority would not have addressed it at all, had I not submitted this dissent.[4] So it seems that speedy-trial jurisprudence in this state is so predictable that many feel the issue is not worth addressing.[5] Without apology, however, I shall continue to address it as I have before.[6]
¶ 24. Here, the majority continues this Court’s historic indifference toward this important constitutional right and exposes a fundamental flaw in the paradigm through which this Court has consistently viewed speedy-trial claims: that this fun *789 damental, constitutional right must take a back seat to the desire to punish those who are alleged to have committed crimes. To that end, this Court’s decisions consistently have found ways to contort, twist, and repackage the speedy-trial test articulated by the United States Supreme Court in Barker[7] to fit the preconceived certainty of doom for all speedy-trial claims in this State.
¶ 25. I did not write our Constitution, and neither did any Justice of this Court. But those who did infused it with the idea that the sovereign may not employ any and all means calculated to convict the accused. Rather, we have enshrined in our Constitution the notion that some of the collective power available to impose a societal code of conduct — the law — must give way to certain individual rights that are more important than a conviction. And among those individual rights found in our Constitution is the right to a speedy trial.
¶ 26. With little success, I have tried to kindle some modicum of concern for that right on this Court. Although discouraged, I refuse to lay down my pen, recognizing full well that this opinion will join my previous ones in the boneyard of dissents that fell on deaf ears. I too loathe the reality that in some cases — because of errors by law enforcement, the prosecutor, the defense counsel, or the trial court — a person who committed a crime may go free. But I loathe even more the thought that we should move systemically toward eliminating that risk by ignoring important constitutional rights in order to obtain and uphold convictions. That view, history teaches, inevitably leads to tyranny.
¶ 27. If in the previous paragraphs I have not been perfectly clear, let me simply state that I believe the Constitution and my oath of office require me to zealously protect constitutional rights, even where that protection is unpopular under a particular set of facts. I recognize that I am bound to apply the binding precedent of the United States Supreme Court in Barker, which many of the opinions cited by the majority have failed to do. This I will try to do. With those thoughts in mind, I would find that Taylor’s right to a speedy trial indeed was violated, and I would reverse his conviction. So I respectfully dissent.
I. The Barker Decision and this Court’s Speedy-Trial Precedent
¶ 28. The constitutional right to a speedy trial, guaranteed by the Sixth Amendment to the United States Constitution [8] and Article 8, Section 26 of the Mississippi Constitution,[9] attaches “at the time of a formal indictment or information or else the actual restraints imposed by arrest and holding to a criminal charge.”[10] We are required to analyze speedy-trial claims through the framework set out by the United States Supreme Court in Barker v. Wingo.[11]
¶ 29. The Barker test balances four factors: (1) the length of the delay, (2) the reason for the delay, (8) the defendant’s assertion of his right, and (4) the prejudice to the defendant.[12] The Barker Court also held that the four factors “must be eonsid- *790 ered together with such other circumstances as may be relevant,” and that “because we are dealing with a fundamental right of the accused, this process must be carried out with full recognition that the accused’s interest in a speedy trial is specifically affirmed in the Constitution.”[13]

Whackr-A-Mole Jurisprudence

¶ 30. Unfortunately, this Court has not faithfully applied the Barker balancing test. Today’s majority provides an excellent analysis of this Court’s opinions over the years, which seemingly have played Whack-A-Mole with the Barker factors. Every time a factor pops up that appears to favor the defendant, this Court whacks it into conformity with the desire to affirm.
¶ 31. For instance, when the Barker Court articulated the first prong of its test — the length of the delay — it stated that “[ujntil there is some delay which is presumptively prejudicial, there is no necessity for inquiry into the other factors that go into the balance.”[14] In 1991, this Court found that the presumptively prejudicial threshold of eight months[15] shifted the burden to the State, stating specifically that “[wjhere the delay has been presumptively prejudicial, the burden falls upon the prosecution.”[16]
¶ 32. But this obvious conclusion — that “presumptively prejudicial” means prejudice is presumed, shifting the burden to the State — did not sit well with later majorities. When it began to appear that defendants were experiencing long delays — some for years — and some were coming dangerously close to winning a speedy-trial motion, this Court changed directions by announcing that “presumptively prejudicial” does not really mean that prejudice is presumed, and amazingly, that “presumptively prejudicial” has nothing to do with the “prejudice” factor of the Barker analysis.[17]
¶ 33. So, today, the phrase “presumptively prejudicial” — taken from Barker itself — does not mean what it says. But I believe Barker’s statement can be read only one way: “presumptively prejudicial” must mean that prejudice is presumed.
¶ 34. Another example is found in this Court’s analysis of the “reason for the delay” factor. In Barker, the United States Supreme Court stated that, while a deliberate attempt by the government to stall trial must weigh heavily against the State,
“[a] more neutral reason such as negligence or overcrowded courts should be weighted less heavily but nevertheless should be considered since the ultimate responsibility for such circumstances must rest with the government rather than with the defendant.”[18]
¶35. So, according to Barker, a trial court’s crowded docket weighs the reason-for-the-delay factor against the State, although not as heavily as it would in cases where the State deliberately stalls the trial. That idea was not popular here. In cases where defendants have shown that long delays were not their fault, this Court says that “in the absence of a showing of prejudice to the defendant, a delay attributable solely to [crowded dockets] does not violate the defendant’s right to a speedy *791 trial.”[19] But under Barker, this delay weighs against the State regardless of prejudice.
¶ 86. Here is another one. Under the third prong — the defendant’s assertion of his right — the Barker Court stated that “[a] defendant has no duty to bring himself to trial; the State has that duty as well as the duty of insuring, that the trial is consistent with due process.”[20] And, while a defendant must demand a speedy trial to win this factor, the Supreme Court has made it quite clear that the timing of the defendant’s assertion should not weigh against him because:
Since under the demand-waiver rule no time runs until the demand is made, the government will have whatever time is otherwise reasonable to bring the defendant to trial after a demand has been made. Thus, if the first demand is made three months after arrest in a jurisdiction which prescribes a six-month rule, the prosecution will have a total of nine months — which may be wholly unreasonable under the circumstances. The result in practice is likely to be either an automatic, pro forma demand made immediately after appointment of counsel or delays which, but for the demand-waiver rule, would not be tolerated. Such a result is not consistent with the interests of defendants, society, or the Constitution.[21]
This is a clear rejection of this Court’s view that because the defendant “failed to assert his right to a speedy trial in a timely manner ..., we must weigh this factor against” him.[22]
¶ 37. Finally, this Court’s recent precedent on the fourth prong — prejudice—conflicts with Barker in several ways. First, as discussed above, recent majorities simply refuse to presume prejudice from a presumptively prejudicial delay. Second, this Court has found the existence of “actual prejudice” is required for a speedy-trial claim. For instance, in Johnson v. State, the defendant clearly won on three Barker factors — length of delay, reason for delay, and assertion of the right.[23] And in addressing the prejudice factor, the majority said “ ‘that where the delay is neither intentional nor egregiously protracted, and there is an absence of actual prejudice to the defense, the balance is struck in favor of rejecting a speedy trial claim.’ ”[24] In other cases, this Court has gone even further and said that any prejudice caused by “incarceration alone is not enough to warrant a reversal”[25] and that “[a] defendant’s assertion of prejudice attributable solely to incarceration, with no other harm, typically is not sufficient to warrant reversal.”[26]
¶ 38. This stands in clear contradiction to the United States Supreme Court’s finding that:
We regard none of the four factors identified above as either a necessary or sufficient condition to the finding of a deprivation of the right of speedy trial. *792 Rather, they are related factors and must be considered together with such other circumstances as may be relevant. In sum, these factors have no talismanic qualities; courts must still engage in a difficult and sensitive balancing process.[27]
Stated another way, courts may not pick out one factor, such as prejudice, and hold that the defendant must win on it to prevail on a speedy-trial claim. The opposite is the law in Mississippi. A defendant who cannot show actual prejudice cannot win a speedy-trial motion, even though the State has won on no factor.[28] And this statement has meaning for the defendant and meaning for the State. As to the defendant, it is not “necessary” to show prejudice to win. And for the State, a showing of prejudice, no matter how pronounced, is not “sufficient” for a reversal.
¶ 39. As a final example, a majority of this Court holds that “Mississippi case law does not recognize [negative emotional, social, and economic] impacts [of incarceration] as prejudice.”[29] This view stands in stark contrast to the Barker Court’s specific statement that:
We have discussed previously the societal disadvantages of lengthy pretrial incarceration, but obviously the disadvantages for the accused who cannot obtain his release are even more serious. The time spent in jail awaiting trial has a detrimental impact on the individual. It often means loss of a job; it disrupts family life; and it enforces idleness. Most jails offer little or no recreational or rehabilitative programs. The time spent in jail is simply dead time.... Finally, even if an accused is not incarcerated prior to trial, he is still disadvantaged-by restraints on his liberty and by living under a cloud of anxiety, suspicion, and often hostility.[30]
¶ 40. In sum, it is clear that this Court has shown little regard for binding precedent from the United States Supreme Court interpreting a protection guaranteed by the United States Constitution. I will now attempt faithfully to apply that precedent.
II. The Correct Barker Balancing Test Applied to this Case
¶ 41. The material facts in this case are not disputed. Taylor was arrested on January 8, 2007, and held on other charges until May 31, 2007. At that time he was set to be released, but he remained in custody because he had been indicted for the present charges. He demanded a speedy trial on August 21, 2008, and moved to dismiss on speedy-trial grounds on November 6, 2008. His trial began on December 1, 2008. No party ever requested a continuance. On these facts, I must conclude that Taylor was denied his constitutional right to a speedy trial.

Length of the Delay

¶42. The speedy-trial clock begins to run at the arrest.[31] Taylor was arrested January 8, 2007. But his arrest stemmed from his possession of a firearm and narcotics on that day, not the charges precipitating this appeal. Instead, the parties agree that Taylor was “released” on the unrelated charges May 31, 2007, but remained in custody for the present charges. So Taylor was effectively arrested for these charges that day, and the speedy- *793 trial clock began to run then. From May 31. 2007, until the trial began on December 1, 2008, 550 days, or eighteen months, elapsed.
¶ 48. Any delay that exceeds eight months is presumptively prejudicial.[32] So this prong weighs in Taylor’s favor. But the circuit judge wholly failed even to recognize Taylor’s presumptively prejudicial delay, let alone balance it with other factors. The following excerpt from the record clearly demonstrates not only the trial judge’s dismissive and erroneous view of Taylor’s right to a speedy trial, but her inappropriate prejudgment of his claim of error and failure to recognize this presumptive prejudice:
THE COURT: I’ll give you time to argue because I want us to hurry up and finish with this. I’m letting her make a record for it because he’s got a speedy date, and it’s going today, but I’ll let her argue the motion for her record.
So the trial judge erred in failing to view the length of delay as presumptively prejudicial and in failing to weigh this factor against the State.

Reason for the Delay

¶ 44. Neither party requested any continuance in this case. Instead, December 1, 2008, was the only date ever set for trial. When ruling on the motion to dismiss, the trial judge stated:
With reference to the demand for a speedy trial, the Court is going to deny the motion to dismiss for failure to provide a speedy trial. This case was indicted in May of 2007. Although it’s been over a year since that time, there’s circumstances both relative to this Court’s docket in terms of the speediness of him getting a trial before 12 of his peers.
The Court finds that there is no prejudice. The rules state that there is arose [sic] circumstances that are outlined that are well within the rules of law which provide that there has been no violation.
¶ 45. So the trial judge’s only statement concerning the reason for the delay was her cryptic reference to “circumstances both relative to this Court’s docket in terms of the speediness of him getting a trial before 12 of his peers.” Taylor was not told what those “circumstances” were.[33] Neither party presented any evidence of another reason.
¶ 46. This Court has stated that “[w]here the defendant has not caused the delay, and where the prosecution has declined to show good cause for the delay, we must weigh this factor against the prosecution.” [34] Here, it is indisputable that Taylor did not cause the delay, and the prosecution showed nothing at all with respect to the delay. And the Barker Court noted that the prosecution ultimately bears the burden to ensure that the case goes to trial.[35] So, where unexplained “circum *794 stances” cause the delay, this factor must be weighed against the State.[36]
¶ 47. The trial judge seemed to misapprehend this prong. At the outset of the speedy-trial arguments, this exchange occurred between Taylor’s attorney and the trial judge:
MS. LEGGETT: Also, Your Honor, for the record, I would like to argue the motion to dismiss based upon failure to provide a speedy trial.
THE COURT: This was by August of this year, and it’s an '07, and it’s two counts. You may proceed briefly because it’s quite speedy in Hinds County.
¶ 48. These dismissive comments expose two facts about how the trial judge analyzed Taylor’s speedy-trial claim. First, she weighed the reason-for-the-delay factor against Taylor, and second, she believed a defendant’s right to a speedy trial was somehow diminished because the case was filed in Hinds County. Both views expose flawed constitutional reasoning.
¶ 49. In Barker, the United States Supreme Court specifically noted that a delay based on overcrowded dockets must be weighed against the State.[37] This, according to the Barker Court, is necessarily so because the State ultimately bears the burden to bring the áccused to trial.[38] While it is true that this reason may weigh against the State to a lesser degree than an intentional delay on the State’s part, we are required by precedent from the United States Supreme Court to weigh this factor against the State. Hinds County very well may suffer from crowded dockets. If that is true, it is the State’s decision not to fund more courts and judges that makes it so.

The Defendant’s Assertion of His Right

¶ 50. It is undisputed that Taylor demanded a speedy trial on August 21, 2008, and moved to dismiss the charges on November 6, 2008. In Jenkins v. State, this Court weighed this factor in the defendant’s favor when he asserted his right 433 days after his arrest.[39] Here, Taylor demanded a speedy trial 448 days after his “release” on the unrelated charges and his “arrest” on the present charges. So I would weigh this factor in Taylor’s favor.

Prejudice

¶ 51. Any delay beyond eight months is presumptively prejudicial.[40] The State presented no evidence in the trial court to rebut the presumption of prejudice. So this factor should be weighed in Taylor’s favor.

Other Relevant Factors

¶ 52. The Barker court stated that the four factors “must be considered together with such other circumstances as may be relevant.”[41] I would find that, in addition to the four-factor analysis above, the trial judge’s dismissive remarks and lack of concern with Taylor’s speedy-trial claim should be weighed against the State:
MS. LEGGETT: Also, Your Honor, for the record, I would like to argue the motion to dismiss based upon failure to provide a speedy trial.
THE COURT: This was by August of this year, and it’s an '07 case, and it’s *795 two counts. You may proceed briefly because it’s quite speedy in Hinds County-
[[Image here]]
THE COURT: I’ll give you time to argue because I want us to hurry up and finish with this. I’m letting her make a record for it because he’s got a speedy date, and it’s going today, but I’ll let her argue the motion for her record.
¶ 53. These comments show the trial judge’s complete lack of objectivity or concern for the constitutional right to a speedy trial. And her remarks border on bitterness and contempt for a defendant who would dare raise such a claim in Hinds County. She begrudgingly allowed Taylor’s counsel to create a record for appeal, never intending actually to consider Taylor’s claim. Before any argument had been made, her decision had been made.
¶54. In sum, Taylor suffered a presumptively prejudicial delay, and the State has not rebutted the presumed prejudice. The reason for the delay — either unexplained or crowded dockets — must lie at the feet of the State, which ultimately bears the burden to bring the accused to trial. Taylor asserted his right, and the circuit judge met his assertion with disinterest and contempt. All four Barker factors weigh in the defendant’s favor, and this case presents a compelling additional circumstance which also supports his cause. So I must conclude that Taylor’s right to a speedy trial was violated.
KITCHENS AND KING, JJ., JOIN THIS OPINION. WALLER, C.J., JOINS THIS OPINION IN PART.

. Barker v. Wingo, 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972).

. "Because the dissent disagrees on the speedy-trial issue and addresses that issue in depth, we provide our analysis as well.”

. See Wells v. State, 160 So.3d 1136, No.2012-KA-01781-SCT, 2015 WL 574761 (Miss. Feb.12, 2015) reh'g denied (April 30, 2015) (not yet released for publication in the permanent law reports) (finding no violation of the right to a speedy trial where the State. failed to brief the issue on appeal).

.See Myers v. State, 145 So.3d 1143, 1152 (Miss.2014) (Dickinson, P.J., concurring in part and dissenting in part) ("If history teaches us anything, it is that this Court has little interest in a defendant’s constitutional right to a speedy trial”); Johnson v. State, 68 So.3d 1239, 1247 (Miss.2011) (Dickinson, P.J., dissenting) ("[T]oday’s final, fatal blow mercifully puts the criminal-defense bar out of its misery. Whereas previous decisions have been less than clear, today’s plurality opinion is as subtle as a stick of dynamite — the Sixth-Amendment right to a speedy trial in Mississippi is dead.”).

. Barker, 407 U.S. at 533, 92 S.Ct. 2182.

. U.S. Const. amend. VI.

. Miss. Const. art. 3, § 26.

. Handley v. State, 574 So.2d 671, 674 (Miss.1990) (quoting Lightsey v. State, 493 So.2d 375, 378 (Miss.1986), superceded by statute on other grounds).

. Handley, 574 So.2d at 674 (citing Barker, 407 U.S. at 514, 92 S.Ct. 2182).

. Barker, 407 U.S. at 530, 92 S.Ct. 2182.

. Id. at 533, 92 S.Ct. 2182.

. Id. at 530, 92 S.Ct. 2182.

. Johnson, 68 5o.3d at 1242 (citing Smith v. State, 550 So.2d 406, 408 (Miss.1989)).

. State v. Ferguson, 576 So.2d 1252, 1255 (Miss.1991), abrogated by Johnson, 68 So.3d at 1243.

. Johnson, 68 So.3d at 1247.

. Barker, 407 U.S. at 531, 92 S.Ct. 2182 (emphasis added).

. Bailey v. State, 463 So.2d 1059, 1062-63 (Miss.1985) (citing Macon v. State, 295 So.2d 742 (Miss.1974); Diddlemeyer v. State, 398 So.2d 1343 (Miss.1981)).

. Barker, 407 U.S. at 527, 92 S.Ct. 2182.

. Id. at 527-28, 92 S.Ct. 2182.

. Bateman v. State, 125 So.3d 616, 631 (Miss.2013).

.Johnson, 68 So.3d at 1241-46.

. Id. at 1246 (quoting Stevens v. State, 808 So.2d 908, 918 (Miss.2002)).

. Sharp v. State, 786 So.2d 372, 381 (Miss.2001) (citing McGee v. State, 608 So.2d 1129, 1130 (Miss.1992); Ross v. State, 605 So.2d 17, 23 (Miss.1992)).

. Ross, 605 So.2d at 23.

. Barker, 407 U.S. at 533, 92 S.Ct. 2182.

. Johnson, 68 So.3d at 1246.

. Manix v. State, 895 So.2d 167, 177 (Miss.2005).

. Barker, 407 U.S. at 532, 92 S.Ct. 2182.

. Handley, 574 So.2d at 674 (citing Smith, 550 So.2d at 408).

. Johnson, 68 So.3d at 1242 (citing Smith, 550 So.2d at 408).

. As this case demonstrates, this Court assumes — as a matter of law with no proof required — that Hinds County Circuit Court dockets are perpetually crowded. This has ■ not gone unnoticed by the State, which has learned that, in Hinds County, it will win the "reason for the delay” Barker factor without bothering to offer any proof or argument. In light of the seemingly desperate condition of the Hinds County trial docket, I find it interesting that, of the seven new trial-judge positions the Legislature created around the State this year, not a single one was created in Hinds County.

. Handley, 574 So.2d at 674 (quoting Perry v. State, 419 So.2d 194, 199 (Miss.1982)).

. Barker, 407 U.S. at 531, 92 S.Ct. 2182.

. Id.

. Id.

. Id.

. Jenkins v. State, 947 So.2d 270, 277 (Miss.2006).

. Johnson, 68 So.3d at 1242 (citing Smith, 550 So.2d at 408).

. Barker, 407 U.S. at 533, 92 S.Ct. 2182.