## IN THE SUPREME COURT OF MISSISSIPPI
## NO. 1999-KA-01516-SCT

*KWAME KENYETTA BRENGETTCY a/k/a MAC 10*

*v.*

*STATE OF MISSISSIPPI*

| | |
|---|---|
| DATE OF JUDGMENT: | 08/13/1999 |
| TRIAL JUDGE: | HON. ANDREW C. BAKER |
| COURT FROM WHICH APPEALED: | YALOBUSHA COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | BRADLEY STUART PEEPLES |
| ATTORNEYS FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL |
| | BY: DEWITT T. ALLRED, III |
| DISTRICT ATTORNEY: | ROBERT L. WILLIAMS |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | AFFIRMED - 09/06/2001 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | 9/27/2001 |

**BEFORE PITTMAN, C.J., COBB AND DIAZ, JJ.**

**COBB, JUSTICE, FOR THE COURT:**

¶1. In February of 1998, Kwame Kenyatta Brengettcy was jointly indicted with three other individuals for the drive-by shooting death of Mark Martin, which had occurred on August 31, 1997. The three-count indictment charged all four men with conspiracy to commit a drive-by shooting and murder. The Yalobusha County Circuit Court granted each of the defendant's motions to sever, and Brengettcy was tried separately on March 8, 1999. That jury was unable to reach a unanimous verdict, and Brengettcy was tried a second time on August 9, 1999. In his second trial, the jury convicted Brengettcy of murder, and the trial court sentenced him to life imprisonment. Aggrieved, Brengettcy now appeals raising the following issues:

> **I. THE TRIAL COURT ERRED IN DENYING THE APPELLANT'S PRO-SE MOTION TO DISMISS, THEREBY VIOLATING HIS CONSTITUTIONAL RIGHT TO A SPEEDY TRIAL.**

> **II. THE TRIAL COURT ERRED IN FINDING SUFFICIENT EVIDENCE TO DENY THE APPELLANT'S MOTIONS FOR A DIRECTED VERDICT AND JUDGMENT NOT WITHSTANDING THE VERDICT.**

> **III. THE TRIAL COURT ERRED IN FINDING THE WEIGHT OF THE EVIDENCE ADEQUATE TO DENY THE APPELLANT'S MOTION FOR A NEW TRIAL.**

> **IV. THE TRIAL COURT ERRED IN GRANTING JURY INSTRUCTION 9 (S-1) AND DENYING JURY INSTRUCTION D-12.**

¶2. We conclude that Brengettcy's assignments of error are without merit, and we affirm the judgment of the trial court.

## FACTS

¶3. On the night of August 31, 1997, Mark Martin was shot and killed in Coffeeville, Mississippi. Earlier that evening, Martin had been involved in an altercation with a man named John Bland at a Coffeeville nightspot. Three other men were present at the scene: Joe Armstrong, Larry Carr, and the appellant, Kwame Kenyetta Brengettcy. Bland, Armstrong, Carr and Brengettcy left the scene in separate cars, but returned about fifteen minutes later in Armstrong's car. Four eyewitnesses positively identified Brengettcy as the person sitting in the front passenger seat of Armstrong's car.

¶4. As Armstrong's vehicle approached, gunfire erupted from it, mortally wounding Martin. Although the testimony was disputed, eyewitnesses said that the gunfire came from the front passenger seat, and one witness expressly stated that Brengettcy was the person who fired. As the gunmen's car sped away, friends of Martin who were eyewitnesses transported the dying man to a hospital in Grenada, Mississippi.

¶5. After learning the identity of the four men involved, police tracked them to a motel in Batesville, Mississippi, and gave chase from there. Police eventually managed to shoot out the tires and bring the vehicle to a stop. At the scene of the capture, Mississippi Highway Patrolman Jerry Eastridge retrieved a .38 Rossi handgun which was later identified as the murder weapon. The four men were arrested at that time.

## ANALYSIS

### I. THE TRIAL COURT ERRED IN DENYING THE APPELLANT'S PRO-SE MOTION TO DISMISS, THEREBY VIOLATING HIS CONSTITUTIONAL RIGHT TO A SPEEDY TRIAL.

¶6. Brengettcy's first issue arises from a pro se motion to dismiss the charges against him which was denied by the trial court. Although Brengettcy states that the trial court erred in denying his pro se motion to dismiss, his motion may be more accurately viewed as a demand for a "fast and speedy trial." At the conclusion of his brief in support of this motion, Brengettcy prays for dismissal of the charges against him.

¶7. Alleged speedy trial violations are examined and determined on a case-by-case basis due to the factual specifics of each action. *Sharp v. State*, 786 So.2d 372, 377 (Miss. 2001). A defendant's right to a speedy trial is secured by the Sixth and Fourteenth Amendments to the United States Constitution and by Article 3, Section 26 of the Mississippi Constitution of 1890. *Beavers v. State*, 498 So.2d 788, 789 (Miss. 1986). The Mississippi Code also provides a statutory right to a speedy trial, stating: "Unless good cause be shown, and a continuance duly granted by the court, all offenses for which indictments are present to the court shall be tried no later than two hundred seventy (270) days after the accused has been arraigned." Miss. Code Ann. § 99-17-1 (2000). This statutory right, often referred to as the 270-day rule, attaches at arraignment rather than at arrest. *Handley v. State*, 574 So.2d 671, 674 (Miss. 1990). The 270-day rule is satisfied when the defendant has been brought to trial. *Id.* at 674.

¶8. Even when that trial results in a mistrial or hung jury, the time of retrial remains within the discretion of the trial court, although a substantial delay may still violate the constitutional right to a speedy trial. *Id.* Because this case involves two trials, an analysis of Brengettcy's speedy trial claim requires the calculation

of three time periods: (1) the time between the arrest and the first trial for constitutional purposes; (2) the time between arraignment and the first trial for 270-day rule purposes; and (3) the time between mistrial and retrial for constitutional purposes.

¶9. A chronology of the relevant dates in this case is as follows:

| | |
|---|---|
| Aug. 31, 1997 | Crime Occurs |
| Sept. 1, 1997 | Brengettcy and co-defendants arrested |
| Feb. 19, 1998 | Indictment filed against all four defendants |
| March 16, 1998 | Counsel appointed for Brengettcy |
| April 10, 1998 | Brengettcy's Motion for Discovery filed |
| July 23, 1998 | Order to Transport Brengettcy from Parchman on or before August 8th |
| July 31, 1998 | Motion to Sever filed |
| Aug. 18, 1998 | Agreed Order of Continuance |
| Sept. 16, 1998 | Order of Continuance and Resetting of Trial Date for March 8, 1999 |
| Nov. 20, 1998 | Brengettcy's pro so motion to dismiss filed |
| March 3, 1999 | Brengettcy's Waiver of Arraignment and Entry of Plea |
| March 8, 1999 | Brengettcy's first trial resulting in a hung jury |
| March 10, 1999 | Notice that jury was unable to reach unanimous verdict in first trial |
| March 12, 1999 | Order of Continuance and Setting 2nd Trial for August 9, 1999 |
| August 9, 1999 | Brengettcy's second trial |

### A. *The Constitutional Right*

¶10. In reviewing such a constitutional challenge, we have not set a specific length of time as being per se unconstitutional, but instead have applied the four-part balancing test articulated by the U.S. Supreme Court in *Barker v. Wingo*, 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972). *Handley*, 574 So.2d at 674. The four *Barker* factors to consider are: (1) the length of the delay, (2) the reason for the delay, (3) the defendant's assertion of his right, and (4) the prejudice to the defendant. *Barker,* 407 U.S. at 530. None of the four factors is determinative; rather, a totality of the circumstances test is used. *Beavers*, 498 So.2d at 790. "We are mindful indeed that no one factor is dispositive of the question. Nor is the balancing process restricted to the *Barker* factors to the exclusion of any other relevant circumstances." *McGhee v. State,* 657 So. 2d 799, 802 (Miss. 1995).

### 1. The length of the delay.

¶11. The first *Barker* factor is the length of the delay. In *Beavers*, this Court identified the relevant dates used to calculate the length of the delay as being the arrest date and the trial date. *Id.* Although all the factors are relevant for the balancing test, this Court has recognized that a delay of eight months or more is presumptively prejudicial. *Smith v. State*, 550 So.2d 406, 408 (Miss.1989). Where the delay is not presumptively prejudicial, there is no need to review the remaining *Barker* factors. *Handley*, 574 So.2d at 677.

¶12. Brengettcy was arrested on September 1, 1997, and first brought to trial on March 8, 1999, for a

total of 554 days or more than 18 months. This delay is presumptively prejudicial and requires an analysis of the remaining *Barker* factors. The length of time between the disposition of his first trial and the commencement of his second trial is only 154 days, which is not presumptively prejudicial, and there is no need to consider the remaining factors with regard to Brengettcy's retrial.

### 2. The reason for the delay.

¶13. The second *Barker* factor requires determination of the reason for the delay and the party to whom the delay is attributable. Delays which are attributable to one party count against that party. *Beavers*, 498 So.2d at 791. Furthermore, the "risk of non-persuasion rests with the prosecution," and where the record is silent as to the cause of a delay, this factor must weigh in favor of the defendant. *Id.*

¶14. The docket in Brengettcy's case reflects that he was indicted by the first grand jury convened following his arrest. The Yalobusha County Circuit Court, First Judicial District, has only two terms of court each year, each consisting of only 12 days. This dearth of available dates for trial necessarily makes it virtually impossible to expeditiously hear cases, whether civil or criminal. The 172 days prior to the indictment should not be counted against either side. During the 180 days between the indictment and the first agreed continuance, routine activities including appointment of counsel and discovery were conducted with regard to all four defendants. No severance was requested by Brengettcy or his three co-defendants until July 31, 1998, (162 days after indictment), and it understandably took longer because there were four attorneys to be appointed and four sets of discovery to be completed.

¶15. The decision to sever the first of Brengettcy's co-defendants was not made until August 18, 1998, and the trial of that severed defendant began that day. An "Agreed Order of Continuance" signed and approved by Brengettcy's lawyer was filed that same day. A second "Order of Continuance" pertinent to Brengettcy and the two remaining co-defendants was filed on September 16, 1998. The trial judge noted that the trial of the severed co-defendant was not concluded until August 19, leaving only two days remaining in the term for all other court matters, and that Brengettcy and the two other co-defendants "were unable to be tried during this term of court due to docket congestion and the trial of co-defendant Bland." Citing statutory good cause, the trial judge reset the trial of Brengettcy and the two other defendants for the next term of court, on March 8, 1999. This delay of six months, until the next term of court, should not be charged against the State. A congested docket is considered "good cause" for delay if the continuance is actually granted for that reason. *Sharp v. State*, 786 So.2d at 378.

¶16. Brengettcy's first trial began on March 8, 1999, the day set by the court in its September order of continuance. That trial ended with "no verdict due to the Jury's inability to reach a unanimous verdict" and, on March 12, 1999, the trial judge again signed an "Order of Continuance and Resetting of the Trial Date" which set a second trial of Brengettcy for the next term of court, on August 9, 1999. This order was entered nunc pro tunc on June 11 and filed on June 17, 1999. These continuances appear to have resulted due to the fact that the four defendants were severed one by one, and due to the six months period of time between court terms. The record is silent with regard to any request from Brengettcy that a special term of court be scheduled . These continuances should not be counted against the State in the *Barker* analysis. *See Armstrong v. State*, 771 So.2d 988, 994-95 (Miss Ct. App. 2000) (applying the severance reasoning in affirming conviction of one of Brengettcy's co-defendants). Furthermore, the third continuance came after Brengettcy's first trial, and so has no effect on the constitutionality of the delay preceding that trial. However, the length of time between Brengettcy's arrest and the first continuance is 352 days which is

still presumptively prejudicial even without considering the delay due to the continuances.

### 3. The defendant's assertion of his right.

¶17. The third *Barker* factor to consider is whether the defendant asserted his right before the trial. A defendant "has no duty to bring himself to trial. . . . Still he gains far more points under this prong of the *Barker* test where he has demanded a speedy trial." *Jaco v. State*, 574 So.2d 625, 632 (Miss. 1990). However, a demand for a speedy trial is distinct from a demand for dismissal due to violation of the right to a speedy trial. *Perry v. State*, 637 So.2d 871, 875 (Miss. 1994). *See also Adams v. State*, 583 So.2d 165, 169-70 (Miss. 1991)(holding that demand for dismissal coupled with demand for instant trial is insufficient to weigh third *Barker* prong in defendant's favor where motion came after bulk of delay had elapsed).

¶18. The record reflects that Brengettcy filed a pro se motion entitled "Motion To Demand Fast and Speedy Trial" accompanied by a pro se "Brief in Support of Motion"[1] on November 20, 1998, which was 323 days after his arrest on September 1, 1997 and 108 days before his first trial. In this brief, Brengettcy "prays for dismissal," and in his brief to this Court, he refers to the pro se brief as a "Motion to Dismiss." In response, the State argues that Brengettcy should not have filed a "Motion to Demand Fast and Speedy Trial" but rather should have filed a "Motion to Dismiss." The State further argues that Brengettcy's motion, whatever its proper form, is procedurally barred because he did not pursue it to a hearing and ruling. The State is incorrect. While failure or delay in raising a speedy trial claim may cost a defendant points in the *Barker* analysis, there is no procedural bar solely for failing to properly pursue the claim in open court.

¶19. Ultimately, however, the issue of whether Brengettcy sought to demand a speedy trial or merely dismissal for lack of a speedy trial is moot, as the record shows that his pro se motion was not submitted until three months after the defendants were severed and the original trial date had passed, at which point any further delays in starting Brengettcy's trial were attributable to him anyway. This issue weighs against Brengettcy.

### 4. The prejudice to the defendant.

¶20. The final prong of the *Barker* analysis - prejudice to the defendant - has two aspects: (1) actual prejudice to the accused in defending his case, and (2) interference with the defendant's liberty. *Perry*, 637 So.2d at 876. The Supreme Court has identified three main considerations in determining whether the accused has been prejudiced by lengthy delay: (1) preventing "oppressive pretrial incarceration;" (2) minimizing anxiety and concern of the accused; and (3) limiting the possibility that the defense will be impaired. *Barker*, 407 U.S. at 532. On appeal, Brengettcy has not identified any particular prejudice suffered due to the State's delay in bringing him to trial. On the contrary, in his "Brief in Support of Motion" which accompanied his pro se motion, Brengettcy indicates that, while awaiting trial, he was already incarcerated on an unrelated charge. Obviously, if Brengettcy was already in jail on unrelated charges, any prejudice that could have arisen merely from interference with his liberty is alleviated, and since Brengettcy did not show any actual prejudice to the defense of his case, this factor cannot weigh in his favor.

¶21. In conclusion, while this Court is troubled by the lengthy delays between the various steps in Brengettcy's prosecution, it is cognizant that a rural court with only two terms each year, for a total of 24 days per year, faces unique difficulties which should not be charged against the State or the defendant. Here, Brengettcy's failure to assert his right in a timely manner and his failure to show any real prejudice

outweigh the delays which resulted from the court schedule. There is no evidence of deliberate delay on the part of the State.

### B. The Statutory Right

¶22. In addition to the constitutional rights afforded by the Sixth and Fourteenth Amendments and by Article 3 of the Mississippi Constitution, Brengettcy also has the statutory right to a speedy trial arising from § 99-17-1. Miss.Code Ann. § 99-17-1 (2000). Under this provision, where the accused is not tried within 270 days of his arraignment, the defendant is entitled to dismissal. *Nations v. State*, 481 So.2d 760, 761 (Miss.1985). In the case sub judice, the court docket reflects that each of the four co-defendants waived arraignment, with each waiver being entered on different dates. There is no mention of arraignment with regard to Brengettcy in the record, until his waiver of arraignment and entry of plea was filed on March 3, 1999, just five days before his first trial. The 270-day rule was not violated.

## II. THE TRIAL COURT ERRED IN FINDING SUFFICIENT EVIDENCE TO DENY THE APPELLANT'S MOTIONS FOR A DIRECTED VERDICT AND JUDGMENT NOT WITHSTANDING THE VERDICT.

¶23. Brengettcy next argues that he was entitled to a directed verdict or a judgment notwithstanding the verdict. The standard for reviewing such motions is whether the evidence was legally sufficient to support the verdict. *Sheffield v. State*, 749 So.2d 123, 125 (Miss.1999). This Court has stated:

> [W]e must, with respect to each element of the offense, consider all of the evidence--not just the evidence which supports the case for the prosecution--in the light most favorable to the verdict. The credible evidence which is consistent with the guilt must be accepted as true. The prosecution must be given the benefit of all favorable inferences that may reasonably be drawn from the evidence. Matters regarding the weight and credibility to be accorded the evidence are to be resolved by the jury. We may reverse only where, with respect to one or more of the elements of the offense charged, the evidence so considered is such that reasonable and fair-minded jurors could only find the accused not guilty.

*Gleeton v. State*, 716 So.2d 1083, 1087 (Miss.1998).

¶24. Brengettcy argues that the prosecution failed to prove his identity as the actual shooter, since the prosecution's witnesses indicated the possibility that there was more than one shooter but only one gun was recovered. This argument, however, is insufficient to overcome the presumption in favor of the verdict. The record reflects the following eyewitness testimony:

> (1) Prosecution witness Milton Kimble testified that, at the time of the shooting, Brengettcy was sitting in the front passenger seat of the vehicle from which the gunshots originated;

> (2) Prosecution witness Kevin Horton also testified that Brengettcy was sitting in the front passenger seat of the car and that gunfire came from the front passenger seat;

> (3) Prosecution witness James Henry Lewis also testified that Brengettcy was sitting in the front passenger seat and that he saw Brengettcy and John Bland preparing to fire weapons;

> (4) Prosecution witness McGary Logan also testified that Brengettcy was sitting in the front passenger

seat and that he saw Brengettcy and Bland shoot Martin.

¶25. Considering the evidence in the light most favorable to the guilty verdict and accepting as true all credible evidence consistent with guilt, the evidence would not compel reasonable and fair-minded jurors to find Brengettcy not guilty. Thus, the trial court's denial of Brengettcy's motions for directed verdict and judgment notwithstanding the verdict was proper. This issue is without merit.

### III. THE TRIAL COURT ERRED IN FINDING THE WEIGHT OF THE EVIDENCE ADEQUATE TO DENY THE APPELLANT'S MOTION FOR A NEW TRIAL.

¶26. Unlike a motion for a directed verdict or judgment notwithstanding the verdict, a motion for a new trial simply challenges the weight of the evidence. *Sheffield*, 749 So.2d at 125. This Court has explained that it will reverse the trial court's denial of a motion for a new trial only for an abuse of discretion. *Id.* at 127. This Court should not order a new trial unless it is convinced that "the verdict is so contrary to the overwhelming weight of the evidence that, to allow it to stand, would be to sanction an unconscionable injustice." *Id.* (quoting *Groseclose v. State*, 440 So.2d 297, 300 (Miss.1983)). Factual disputes are properly resolved by a jury and do not mandate a new trial. *McNeal v. State*, 617 So.2d 999, 1009 (Miss.1993).

¶27. Brengettcy argues that *Edwards v. State,* 736 So.2d 475, 482 (Miss. Ct. App. 1999), is on point and compels a reversal of his conviction. In *Edwards*, the Court of Appeals reversed a murder conviction where the only eyewitness admitted at trial that he was not certain the defendant was the person he saw at the scene of the crime. *Id.* The Court of Appeals distinguished the issue of witness credibility from that of witness certainty and concluded that the testimony of a vacillating witness, standing alone, is insufficient to support a jury's verdict. *Id.* at 483 (noting that "[f]or evidence that is sufficient to convict, the jury must among other requirements be given proof that identifies the accused in a manner adequate to convince them beyond a reasonable doubt. If only one person makes the identification and there is no other evidence that adds to it, then if that witness himself is not convinced beyond a reasonable doubt, neither may be the jury.") .

¶28. Brengettcy misapprehends the *Edwards* holding. In the instant case, none of the four prosecution eyewitnesses vacillated in their testimony as the witness in *Edwards* did, and even those witnesses who did not actually see Brengettcy open fire were affirmatively able to either place him in the front passenger seat of the car or to testify that gunfire originated from the front passenger seat. Furthermore, any factual disputes between the prosecution witnesses and the defense witnesses were resolved by the jury and should not be disturbed. Plainly, the trial court did not abuse its discretion by denying Brengettcy's motion for a new trial.

### IV. THE TRIAL COURT ERRED IN GRANTING JURY INSTRUCTION 9 (S-1) AND DENYING JURY INSTRUCTION D-12.

¶29. In reviewing the granting or refusal of various instructions, this Court has held that the instructions actually given must be read as a whole, and no reversible error will be found if the instructions fairly announce the law of the case and create no injustice when so read. *Coleman v. State*, 697 So.2d 777, 782 (Miss.1997) (quoting *Collins v. State*, 691 So.2d 918 (Miss.1997)). Ordinarily, failure to object to a given instruction at trial results in a procedural bar on appeal, unless its granting amounts to plain error. *Sanders v. State*, 678 So.2d 663, 670 (Miss.1996) ("As a rule, the Supreme Court only addresses issues on plain error review when the error of the trial court has impacted upon a fundamental right of the

defendant"); ***Walker v. State***, 671 So.2d 581, 606 (Miss.1995). However, an erroneously given instruction constitutes plain error where the jury is not fully instructed on the elements of the crime. ***Hunter v. State***, 684 So.2d 625, 636 (Miss.1996).

### A. *Jury Instruction No. 9*

¶30. In the case sub judice*,* Jury Instruction No. 9 reads as follows:

> Members of the Jury, the Defendant, KWAME KENYETTA BRENGETTCY, has been charged with the crime of Murder along with JOHN BLAND, JR., A/K/A "J.R.", JOE ARMSTRONG A/K/A AFALFA and LARRY CARR, JR. A/K/A "SPANKY." As you know, each Defendant is tried separately, and only KWAME KENYETTA BRENGETTCY is on trial today for this crime.

> This Court instructs the Jury that Murder is the killing of a human being with malice aforethought, not in necessary self-defense, without the authority of law, by any means or by any manner, when done with the premeditated and deliberate design to effect the death of the person killed.

> The Court further instructs the Jury that if you believe from the evidence in this case, beyond a reasonable doubt, that from the evidence presented during this trial that someone other than KWAME KENYETTA BRENGETTCY actually pulled the trigger and shot and killed Mark Martin, but that more than one person is responsible for the death of Mark Martin, you may still find the Defendant KWAME KENYETTA BRENGETTCY, guilty of Murder.

> Accordingly, the Court instructs you the Jury that each person present at the time, and consenting to and encouraging the commission of a criminal offense, including murder, and knowingly, willfully, and feloniously doing any act which is an element of the crime, or immediately connected with it, or leading to its commission, is as much a principle offender as if he had with his own hand pulled the trigger and committed the whole offense. Therefore, if you are unable to find beyond a reasonable doubt that KWAME KENYETTA BRENGETTCY actually shot with a firearm and killed Mark Martin, But, you the Jury do find from the evidence beyond a reasonable doubt that:

> 1) The Victim, Mark Martin, was a living person on September 1, 1997, in Coffeeville, MS and;

> 2) Someone other than the Defendant, KWAME KENYETTA BRENGETTCY, did willfully and with malice aforethought, shoot with a firearm and kill Mark Martin, with the deliberate design to effect the death of Mark Martin, and;

> 3) The Defendant, KWAME KENYETTA BRENGETTCY, was present at the time of the murder of Mark Martin, and consented to and encouraged the commission of the crime of the Murder of Mark Martin, and did knowingly, willfully, unlawfully and feloniously do any act which is an element of the crime of murder, or leading to its commission, such as, if you the jury so find, but not necessarily limited to, knowingly, willfully, unlawfully and feloniously encouraging the actual shooter to shoot and kill Mark Martin and/or also shoot at with a firearm but not actually hit Mark Martin, then you shall find the Defendant, KWAME KENYETTA BRENGETTCY, Guilty of the Crime of Murder of Mark Martin.

> If the State has failed to prove any one or more of these elements, beyond a reasonable doubt, then the jury shall find KWAME KENYETTA BRENGETTCY, not guilty of murder.

¶31. Brengettcy argues that Jury Instruction 9 is a *Hornburger* Instruction - an instruction which impermissibly allows a jury to convict a defendant for merely finding that he did any single act which is an element of the crime of which he is accused. In *Hornburger v. State*, 650 So.2d 510, 515 (Miss. 1995), this Court held that such an instruction was improper, although it is harmless error where the instructions read as a whole require the State to prove every element of the offense charged. The instruction at issue in *Hornburger* read as follows:

> The Court instructs the Jury that each person present at the time, and consenting to and encouraging the commission of a crime, and knowingly, willfully and feloniously doing any act which is an element of the crime or immediately connected with it, or leading to its commission, is as much a principal as if he had with his own hand committed the whole offense; and if you find from the evidence beyond a reasonable doubt that the defendant, Gregory Hornburger, a/k/a Greg Hornburger, did willfully, knowingly, unlawfully and feloniously do any act which is an element of the crime of burglary of a building, or leading to its commission, then and in that event, you should find the defendant guilty as charged.

*Id.* at 513-14.

¶32. While this Court held the original *Hornburger* instruction to be harmless error, in *Liggins v. State*, 726 So.2d 180, 184 (Miss. 1998), we reversed a conviction where a very similar jury instruction said that the jury "shall" find the defendant guilty rather than "should" find him guilty, did not make the defendant's consent an element to be proven by the State, and was not accompanied by an additional instruction laying out the correct statement of the law. The net result of the *Liggins* instruction was that the State's burden of proof was lessened, which compelled reversal. *Id.* at 184. *See also Berry v. State*, 728 So.2d 568 (Miss. 1999)(reversing where aiding and abetting instruction could mislead jurors into thinking they had option of convicting even if State had proven only one element of crime).

¶33. Here, while Jury Instruction 9 was not the best possible statement of the law, the instruction did make Brengettcy's consent an element to be proven by the State, and it also said that the State was required to prove every element of the crime before the jury could convict. The error which led to reversal in *Liggins* is simply not present here, and this issue is without merit.

### B. Proposed Jury Instruction D-12

¶34. Brengettcy challenges the trial court's denial of his proposed Jury Instruction D-12, which is a jury nullification instruction. Jury Instruction D-12 reads as follows:

> The Court instructs the Jury that under the Constitution of the United States, the Jury has a paramount right to acquit an accused person for whatever reason and to find him not guilty, even though the evidence may support a conviction, and this is an important part of the jury trial system guaranteed by the Constitution.

> The Court further instructs the Jury that this principle of jury nullification is as much a part of and just as important to the constitutional process as any other instruction which the Court has given this Jury, and that in the final analysis, you, ladies and gentlemen of the Jury, are the sole judges of whether it is right and fair to convict the Accused or whether under the totality of the circumstances, the Accused should be found guilty. In arriving at your verdict you are not compelled to answer to anyone or to the

State, nor are you required at any time by the Court or any person or party to give a reason or to be brought to accountability for your decision and vote.

¶35. However, Brengettcy's brief contains absolutely no arguments or case law supporting the use of this instruction. The general rule is that failure to cite to any relevant authority in support of an argument procedurally bars that argument on appeal. *Edwards v. State*, 737 So.2d 275, 295 (Miss. 1999). In any event, this Court has clearly established that while a jury does indeed have the power to acquit for any reason whatsoever, a defendant is not entitled to an instruction that it can ignore the law to do so. *Nicolaou v. State*, 612 So.2d 1080, 1084 (Miss. 1992). This issue is without merit.

## CONCLUSION

¶36. For the foregoing reasons, Brengettcy's conviction and sentence are affirmed.

¶37. **CONVICTION OF MURDER AND SENTENCE OF LIFE IMPRISONMENT IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS AFFIRMED. SENTENCE SHALL RUN CONSECUTIVELY TO ANY OTHER SENTENCES THE APPELLANT MAY PRESENTLY BE SERVING.**

> **PITTMAN, C.J., BANKS, P.J., SMITH, MILLS, WALLER, DIAZ AND EASLEY, JJ., CONCUR. McRAE, P.J., CONCURS IN RESULT ONLY.**

1. These two documents are the only "speedy trial" documents filed before the trial.